## GARY K. WALLENTA *v.* MICHAEL L. MOSCOWITZ
### (AC 23049)

Schaller, Dranginis and Bishop, Js.

Argued September 19, 2003—officially released January 27, 2004

*Chris DeMarco*, with whom was *Michael L. Moscowitz*, for the appellant-appellee (defendant).

*David A. Slossberg*, with whom, on the brief, was *Scott T. Penner*, for the appellee-appellant (plaintiff).

*Opinion*

DRANGINIS, J. This appeal concerns rescission and restitution of a contract for the sale of real property. The defendant, Michael L. Moscowitz, an attorney licensed to practice law in the state of Connecticut, agreed to sell certain premises to the plaintiff, Gary K. Wallenta. At trial, the parties agreed to bifurcate the issues of liability, which was tried to the jury, and the remedy, which was tried to the court. The jury returned a verdict in favor of the plaintiff, and the court ordered the contract rescinded and that the defendant pay restitution to the plaintiff. The defendant appeals from the judgment of the trial court asserting multiple claims that the court improperly (1) charged the jury, (2) denied his postverdict motions and (3) awarded attorney's fees.[1] The plaintiff has cross appealed, claiming that the court improperly calculated both the (1) amount of restitution and (2) the amount of prejudgment interest owed to her by the defendant. We affirm the judgment of the

---

[1] In his statement of the issues in his brief, the defendant has listed eleven separate items. In this opinion, we address each of the defendant's claims, but not necessarily in the manner in which he stated them.

trial court as to liability, but reverse the judgment with respect to the amount of restitution and prejudgment interest.

We begin by setting forth the facts and procedural history relevant to these appeals. During the liability phase of the trial, the jury reasonably could have found the following facts. The subject real property is located at 686 East Broadway in Milford (premises). In 1992, the defendant owned the premises and had offered them for sale. In August, 1992, the plaintiff twice visited the premises in the company of her real estate agent, David Frankel. The defendant was present on both occasions and, on each occasion, walked to the back of the premises with the plaintiff and informed her that the premises extended to the area of cut grass. He also told the plaintiff that he owned the clothesline behind the house. During the second visit, the plaintiff's then fourteen year old son accompanied her and heard the defendant state that the boundary of the premises extended to the area where the grass had been cut. Frankel confirmed the testimony of the plaintiff and her son regarding the defendant's representation that the boundary of the premises extended to the area of cut grass.

On August 19, 1992, the plaintiff signed a contract to purchase the premises for $105,000. She agreed to pay $35,000 in cash and to mortgage the premises for the remainder of the purchase price. Paragraph J of the contract provided in relevant part: "Warranty Deed, Marketable Title . . . SELLER agrees to provide BUYER at the time of closing any survey or map in the possession of SELLER." The defendant also signed the contract.

The parties closed the sales agreement on October 30, 1992. Both parties were represented by an attorney. At the closing, the defendant presented a signed affidavit attesting that there was no survey of the premises

and that "there are no encroachments of structures or other improvements onto adjoining land or any easement, and that no structures or other improvements encroach onto the subject premises," and that the affidavit "is made for the purpose of inducing a purchase of said premises . . . ." The plaintiff relied on the defendant's affidavit in purchasing the premises.

In 1987, however, at a time when he owned the premises, the defendant, in fact, had obtained a survey. The survey indicated that stairs at the back of the house were one foot from the boundary of the premises. Nonetheless, the defendant constructed a deck at the back of the house that went beyond the boundary of the premises; the previously mentioned clothesline also was not on property owned by him. In 1995, the plaintiff engaged the services of a contractor with the intention of building a three season room on the footprint of the deck. At the time, a neighbor approached the plaintiff and informed her that the deck encroached on the land of another. The contractor investigated the matter in the Milford planning and zoning office and found the 1987 survey, which revealed that the deck extended beyond the bounds of the premises. After communicating with Milford officials, the plaintiff ceased her efforts to construct the three season room.

The plaintiff subsequently confronted the defendant about the situation and his failure to produce the 1987 survey at the closing. The parties were unable to resolve the matter, and the plaintiff commenced the present litigation in the fall of 1995. The original action sounded in five counts: Fraudulent misrepresentation, negligent misrepresentation, breach of the covenant of good faith and fair dealing, and violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. The court, *Corradino, J.*, granted the defendant's motion for summary judgment as to the CUTPA claim.

The parties presented evidence to the jury in March, 2001, and the jury returned a verdict in favor of the plaintiff on the four remaining counts. The defendant filed a number of postverdict motions, which the court denied. Over four days, between July, 2001, and April, 2002, the parties presented evidence to the court as to the remedies of rescission and restitution. By memorandum of decision filed April 24, 2002, the court ordered the plaintiff to convey the premises to the defendant on or before June 1, 2002, and ordered the defendant to pay the plaintiff restitution by that date as well. The defendant appealed and the plaintiff cross appealed.

I

DEFENDANT'S APPEAL

The defendant has raised three types of claims on appeal, notably that the court improperly (1) instructed the jury, (2) denied his postverdict motions and (3) awarded the plaintiff attorney's fees. The defendant's claims lack merit.

A

The defendant claims that the court improperly charged or failed to charge the jury with respect to (1) clear and convincing evidence, (2) assumption of the risk, (3) injury as an element of fraud and (4) portions of the contract. We disagree with the defendant's claims.

"Our standard of review on this claim is whether it is reasonably probable that the jury was misled. . . . The test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Therefore, jury instructions need not be exhaustive, perfect, or technically accurate. Nonetheless, the trial court must correctly adapt the law to the case in question

and must provide the jury with sufficient guidance in reaching a correct verdict." (Internal quotation marks omitted.) *Barrett* v. *Hebrew Home & Hospital, Inc.*, 73 Conn. App. 327, 332, 807 A.2d 1075 (2002).

1

The defendant's first instructional claim is that the court's charge on clear and convincing evidence was improper with regard to the plaintiff's claim of fraudulent misrepresentation. More specifically, the defendant claims that the court did not use the talismanic language "clear and satisfactory" or "clear, precise and unequivocal" when defining the standard of proof applicable to the first three elements required to be proven in a claim of fraudulent misrepresentation.[2] On the basis of our review of the court's instruction regarding fraud, we conclude that it was an accurate statement of the law and sufficiently guided the jury in reaching its verdict.

After explaining to the jury the elements of fraudulent misrepresentation, the court stated that "those first three elements need to be proven by clear and convincing evidence." After distinguishing clear and convincing evidence from the criminal standard of evidence beyond a reasonable doubt and the usual civil standard of preponderance of the evidence, the court stated: "So, how do we articulate what that higher standard of proof is? This standard, clear and convincing, would be, [to] me, in the jury's mind, if the evidence establishes for the jury a reasonable belief that the facts asserted are highly, probably, true. That said, probability is substantially greater than the probability that they are not true. Okay.

---

[2] "The essential elements of a cause of action in fraud are: (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury." (Internal quotation marks omitted.) *Anastasia* v. *Beautiful You Hair Designs, Inc.*, 61 Conn. App. 471, 477, 767 A.2d 118 (2001).

That is to say the scale must be heavily tipped in [the] plaintiff's favor. The other standard, more probably than not, the one that . . . governs everything else in this case, is not sufficient on fraudulent misrepresentation."

A party alleging fraudulent misrepresentation "must prove the existence of the first three of [the] elements by a standard higher than the usual fair preponderance of the evidence, which higher standard we have described as clear and satisfactory or clear, precise and unequivocal." (Internal quotation marks omitted.) *Citino* v. *Redevelopment Agency*, 51 Conn. App. 262, 276, 721 A.2d 1197 (1998).

"Connecticut case law firmly establishes that fraud must be proven by a standard more exacting than 'a fair preponderance of the evidence.' This court has most recently formulated the proper standard as 'clear and satisfactory evidence.' *Miller* v. *Appleby*, 183 Conn. 51, 55, 438 A.2d 811 (1981); see *Bruneau* v. *W. & W. Transportation Co.*, 138 Conn. 179, 182, 82 A.2d 923 (1951); *Hathaway* v. *Bornmann*, 137 Conn. 322, 325, 77 A.2d 91 (1950). A second line of cases prefers the language of the trial court, 'clear, precise and unequivocal evidence.' *DeLuca* v. *C. W. Blakeslee & Sons, Inc.*, 174 Conn. 535, 546, 391 A.2d 170 (1978); *Busker* v. *United Illuminating Co.*, 156 Conn. 456, 458–59, 242 A.2d 708 (1968); *Creelman* v. *Rogowski*, 152 Conn. 382, 384, 207 A.2d 272 (1965); *Basak* v. *Damutz*, 105 Conn. 378, 382–83; 135 A. 453 (1926); see *Lopinto* v. *Haines*, 185 Conn. 527, 534, 441 A.2d 151 (1981). Under either formulation, a plaintiff's burden cannot be equated with the fair preponderance standard of proof for ordinary civil actions." *Alaimo* v. *Royer*, 188 Conn. 36, 39, 448 A.2d 207 (1982).

" 'Clear and satisfactory' evidence is the equivalent to 'clear and convincing' evidence." *Dalia* v. *Lawrence*, 226 Conn. 51, 78, 627 A.2d 392 (1993) (*Berdon, J.*, dis-

senting); *Parker* v. *Slosberg*, 73 Conn. App. 254, 263, 808 A.2d 351 (2002).[3] "This standard of proof is sustained only if the evidence induces in the mind of the trier a reasonable belief that the facts asserted are *highly probably true*, that the probability that they are true or exist is *substantially greater* than the probability that they are false or do not exist." (Emphasis in original; internal quotation marks omitted.) *Dalia* v. *Lawrence*, supra, 78–79 (*Berdon, J.*, dissenting).

We conclude that the court's instruction as to clear and convincing evidence correctly conveyed the standard of proof by which the plaintiff had to prove fraudulent misrepresentation, it is reasonably probable that the jury was not misled and no injustice has been done.

2

The defendant's second claim with respect to the jury instruction concerns the court's refusal to charge the jury on assumption of the risk. We conclude, as a matter of law, that a charge concerning assumption of the risk was not applicable to the facts of this case.

The following facts are relevant to the defendant's claim. At the time of the closing, the defendant failed to provide the 1987 survey of the premises, but he provided a seller's affidavit on an American Title Insurance Company form attesting that "there are no encroachments of structures or other improvements onto adjoining land . . . ." The defendant, however, informed the plaintiff and her attorney that the deck on the back of the house violated the setback provisions of the Milford zoning laws. At the trial, Joseph Barnes, the attorney who represented the plaintiff at the closing, testified that he had discussed the matter with the plaintiff at the closing and told her that "the only way to know for

---

[3] See also C. Tait, Connecticut Evidence (3d Ed. 2001) § 3.5.2, pp. 141–43 (discussing lack of uniformity of expression to articulate standard of proof more onerous than fair preponderance of evidence).

sure exactly what you are getting is to get a survey." The plaintiff informed Barnes that she did not want the deck, and the conversation ended.

On the basis of Barnes' testimony, the defendant submitted a request to charge on assumption of the risk.[4] The court, however, noted the distinction between violating a zoning setback and the boundaries of the premises. Furthermore, Max Case, the defendant's attorney at the closing, testified that he and Barnes had discussed the zoning problem and concluded that it was a nonissue, as Milford had not sought to enforce the setback violation within the time prescribed by General Statutes § 8-13a.[5]

At trial and on appeal, the defendant has asserted the rule that "[w]here a party realizes he has only limited information upon the subject of a contract, but treats that knowledge as sufficient in making the contract he is deemed to have assumed the risk of a mistake . . . ." (Citation omitted; internal quotation marks omitted.) *Holly Hill Holdings* v. *Lowman*, 226 Conn. 748, 757, 628 A.2d 1298 (1993).[6] As the court and

---

[4] Although the court noted that the defendant had not pleaded assumption of the risk as a special defense and may not be entitled to such a charge, the court stated that it wanted to decide the issue on the merits rather than on the technicalities of a rule of procedure. We decide appellate issues on the basis of the trial court's rulings. See *Crest Pontiac Cadillac, Inc.* v. *Hadley*, 239 Conn. 437, 444 n.10, 685 A.2d 670 (1996) (claims not decided by trial court not appropriate for appellate review).

[5] General Statutes § 8-13a (a) provides in relevant part: "When a building is so situated on a lot that it violates a zoning regulation of a municipality which prescribes the location of such a building in relation to the boundaries of the lot or when a building is situated on a lot that violates a zoning regulation of a municipality which prescribes the minimum area of the lot, and when such building has been so situated for three years without the institution of an action to enforce such regulation, such building shall be deemed a nonconforming building in relation to such boundaries or to the area of such lot, as the case may be."

[6] Section 154 of 1 Restatement (Second), Contracts, pp. 402–403 (1981), provides in relevant part: "A party bears the risk of a *mistake* when . . . (b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to *the facts to which the mistake relates* but treats

the plaintiff have made clear, that rule does not apply to the facts of this case.

First, as the court noted, the risk that the plaintiff decided to take was whether the deck violated the Milford setback law, not whether the boundaries of the premises were as the defendant represented them. Second, the plaintiff did not seek rescission of the contract on the basis of mistake, but rather on the basis of fraud.

A court must enforce a contract between private parties "unless the contract is voidable on grounds such as mistake, fraud or unconscionability." Id., 756. "[T]he right to rescind a contract for the sale of land . . . is not necessarily destroyed because the buyer failed to make an independent investigation which would have revealed that the representation upon which he relied was false." *Kavarco* v. *T.J.E., Inc.*, 2 Conn. App. 294, 301, 478 A.2d 257 (1984). "To shield a seller with a buyer's negligence in not finding out whether the representation was true or false would be to give the seller the fruit of his falsehood. The defendants' argument raises the issue of whether the law should choose either to allow the person who fraudulently misrepresented a basic fact to use the armament of caveat emptor to escape liability, or not to require the person to whom the misrepresentation was made to conduct an independent investigation as to the truth of an ascertainable fact. The Restatement chooses the latter. [3] Restatement (Second), Torts § 540. This court does also." *Kavarco* v. *T.J.E., Inc.*, supra, 301–302; see also *Kim* v. *Magnotta*, 49 Conn. App. 203, 226, 714 A.2d 38 (1998) (*Lavery, J.*, dissenting), rev'd in part on other grounds, 249 Conn. 94, 733 A.2d 809 (1999). Our conclusion also is informed by the facts and rules of law stated in *Warman* v. *Delaney*, 148 Conn. 469, 172 A.2d 188 (1961).

his limited knowledge as sufficient . . . ." (Emphasis added.) See *Shoreline Communications, Inc.* v. *Norwich Taxi, LLC*, 70 Conn. App. 60, 64 n.3, 797 A.2d 1165 (2002).

For the foregoing reasons, the court did not improperly decline to charge the jury as to the defense of assumption of the risk.

### 3

The defendant's third claim that the court's jury instruction was improper is that the court failed to provide a proper instruction as to damages. We are not persuaded.

With respect to damages, the court charged the jury as follows: "You'll note that in many of the elements of many of the charges or counts that I've gone through with you that the last ingredient is said to be the harm to the plaintiff or loss to the plaintiff or detriment to the plaintiff. Now, this case has been shaped in a way that the lawyers have left to me the damage assessment or damage review or scrutiny or award if there is to be one, or remedy if there is to be one. Therefore, you do not have to decide those issues. But we have told you, because it is so, that an element of these four counts is that [the] plaintiff show you there has been harm suffered. Now, what I am telling you at this point is that it will suffice for you on that damage or harm aspect of each of these counts if you come to the conclusion that [the] plaintiff probably suffered general detriment, either in her usage of the land or in its value or in its size. All right. In other words, you should not say that [the] plaintiff has failed to show you her damages because they have not been shown in a specific, clear way. The lawyers have agreed that I will be dealing with damages in a clear, specific way, if damages are generally proven or accepted by the jury. Okay. So, with regard to whether you feel the plaintiff has suffered harm or detriment or loss, it is sufficient for you to find that by a preponderance of the evidence, [the] plaintiff suffered a general sort of harm, either of usage of the property or the regard to its size or value."

The court's instruction comports with the law of equitable rescission. "The equitable remedy of rescission is not barred because of the fact that the defrauded party suffered no pecuniary loss. . . . The purchase of real estate for a residence happens infrequently in the lifetime of the average family. The very fact that the land did not have the fundamental characteristics which were attributed to it by the seller is sufficient in and of itself to show that the buyer suffered damage or irreparable harm. . . . If damages would be inadequate for justice in a particular case, rescission and restitution is the proper remedy." (Citations omitted.) *Kavarco* v. *T.J.E., Inc.*, supra, 2 Conn. App. 299–300.

The defendant has not provided any analysis of the evidence in this case and how the court's instruction to the jury was misleading or not an accurate statement of the law. There was sufficient evidence before the jury by which it could have concluded that the plaintiff suffered irreparable harm as a result of the defendant's misrepresentation. The plaintiff testified that she felt cheated. The premises were not as large as she was led to believe, and she therefore was unable to construct a three season room.

Furthermore, during the charging conference, counsel for the defendant agreed with the charge the court proposed to give the jury as to damages. This court has said many times that "a party may not pursue one course of action at trial for tactical reasons and later on appeal argue that the path he rejected should now be open to him." (Internal quotation marks omitted.) *In re Kachainy C.*, 67 Conn. App. 401, 413 n.8, 787 A.2d 592 (2001). For the reasons stated, the court's instruction was not improper.

4

The defendant's last instructional claim is that the court improperly charged the jury not to consider para-

graph C of the contract.[7] The defendant has provided no law or legal analysis to support his claim. Ordinarily, this court declines to review claims that have not been briefed thoroughly. *Moasser* v. *Becker*, 78 Conn. App. 305, 327, 828 A.2d 116, cert. denied, 266 Conn. 910, 832 A.2d 70 (2003). Furthermore, during the charging conference, counsel for the defendant agreed with the court, that, as a matter of law, paragraph C of the contract was inapplicable. As we stated in part I A 3, a party may not take one side of an issue at trial and jump to the other side on appeal when the outcome of trial was unsatisfactory to him.

For all of the foregoing reasons, we conclude that the court's instruction to the jury conformed to the law and reasonably was adapted to the evidence. It was not reasonably probable that the jury was misled or that justice was not served.

B

The defendant's second set of claims concerns the court's denial of his postverdict motions to set aside the verdict due to insufficient evidence and for a mistrial. We concur with the court's rulings on the defendant's postverdict motions.

The standard by which we review a court's ruling on a motion to set aside the verdict and a motion for a mistrial is abuse of discretion. See *Arnone* v. *Enfield*, 79 Conn. App. 501, 505–506, 831 A.2d 260, cert. denied, 266 Conn. 932, 837 A.2d 804 (2003); *Nevers* v. *Van Zuilen*, 47 Conn. App. 46, 51, 700 A.2d 726 (1997). "In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion

---

[7] Paragraph C of the contract concerned the condition of the premises and the physical inspection contingency of paragraph eight of the contract.

is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) *Arnone* v. *Enfield*, supra, 505–506.

1

The defendant claims that there was insufficient evidence (1) to support the jury's verdict on the plaintiff's claim of negligent misrepresentation and (2) that the plaintiff had satisfied the condition precedent to rescission. We disagree.

In the more common situation in which an appellant claims that there was insufficient evidence to support the verdict, this court "must determine, in the light most favorable to sustaining the verdict, whether the totality of the evidence, including reasonable inferences therefrom, supports the jury's verdict . . . . In making this determination, [t]he evidence must be given the most favorable construction in support of the verdict of which it is reasonably capable. . . . In other words, [i]f the jury could reasonably have reached its conclusion, the verdict must stand, even if this court disagrees with it." (Citations omitted; internal quotation marks omitted.) *Ormsby* v. *Frankel*, 255 Conn. 670, 692, 768 A.2d 441 (2001). The claims raised by the defendant, however, are claims of law over which our standard of review is plenary. See *Robinson* v. *Coughlin*, 266 Conn. 1, 5, 830 A.2d 1114 (2003) (where court's decision based on conclusion of law rather than exercise of judicial discretion, review is plenary).

a

In his first sufficiency of the evidence claim, the defendant argues that the plaintiff could not prevail because she did not present evidence of the standard of care applicable to her claim of negligent misrepresentation. In his brief, the defendant has relied on a legal malpractice case for the proposition that a lay jury

needs the assistance of expert testimony to determine the standard of care applicable to the practice of law and whether that standard has been breached. See *Dubreuil* v. *Witt*, 80 Conn. App. 410, 420, 835 A.2d 477 (2003). Although the defendant has stated an accurate rule of law, the rule is inapplicable to the facts of this case.

Although the defendant is an attorney licensed to practice in this state, he did not sell the premises, which was his family home, in the capacity of a practicing attorney. He sold the premises as a private individual and was represented by an attorney at the closing. It is certainly within the ordinary experience of a lay jury to know whether a misrepresentation as to the boundaries of real property, particularly a family home, violates the standard of care the seller of land owes a buyer. The plaintiff did not need to present expert testimony to prevail on her claim of negligent misrepresentation. See *Card* v. *State*, 57 Conn. App. 134, 138, 747 A.2d 32 (2000) (" 'expert testimony is admissible if . . . that skill or knowledge is not common to the average person' "). We therefore conclude that the court did not abuse its discretion by denying the defendant's motion to set aside on the this ground.

b

The defendant's second sufficiency of the evidence claim is that the plaintiff failed to prove that she notified him of her intention to reconvey the premises, which the defendant claims is a condition precedent to restitution.[8] In making his claim, the defendant argues that

---

[8] In their primary briefs to this court, both parties rely on *Family Financial Services, Inc.* v. *Spencer*, 41 Conn. App. 754, 677 A.2d 479 (1996), for the rule of law related to the condition precedent to rescission. The rule in *Family Financial Services, Inc.*, is inapposite, as rescission in that case was based on a federal statute concerning the issue of notice of an intention to rescind. Id., 770. Rescission in this case is, however, founded on the common law.

"As a condition precedent to a rescission, the [plaintiff was] required to allege and prove that [he] had restored or offered to restore [the defendant]

the court improperly admitted hearsay evidence in the form of a two page document (exhibit twelve) to prove that the plaintiff had given him *notice* that she was offering to reconvey the premises.[9] On appeal, the plaintiff has argued that the letter was admissible, but that even if it were not, her complaint satisfied the notice precondition for restitution.[10]

During the hearing before the court as to rescission and restitution, the plaintiff offered exhibit twelve into evidence. The defendant objected to the admission of the letter on grounds that it was not signed, it was not the best evidence, it was hearsay and it was not relevant.[11] The plaintiff's counsel explained that the letter was relevant to prove the offer to rescind. Although the court did not understand why exhibit twelve was being offered into evidence, it admitted the exhibit, telling the parties, "I'll consider it, and if I feel that it was inappropriate to take it under consideration, I'll announce it in the opinion."

to its former condition as nearly as possible. *Mandeville* v. *Jacobson,* 122 Conn. 429, 433, 189 A. 596 [1937]; *Loveland* v. *Aymett's Auto Arcade, Inc.,* 121 Conn. 231, 236, 184 A. 376 [1936]; *Bitondi* v. *Sheketoff,* 91 Conn. 123, 126, 99 A. 505 [1916]; 5 Corbin, Contracts § 1114. *Keyes* v. *Brown,* 155 Conn. 469, 476, 232 A.2d 486 (1967)." (Internal quotation marks omitted.) *Duksa* v. *Middletown,* 192 Conn. 191, 197, 472 A.2d 1 (1984).

[9] The document admitted into evidence was a copy of a letter the plaintiff's trial counsel had sent to Case, the plaintiff's attorney at the closing. The plaintiff testified that she received a courtesy copy of the letter. The contents of the letter indicate that settlement discussions had been ongoing between the parties' respective legal counsel. The letter stated that the plaintiff wanted to rescind the contract and that she intended to commence a lawsuit. Attached to the letter was a copy of the facsimile transmittal page from the plaintiff's counsel to Case.

[10] The revised complaint alleged in relevant part that the "[p]laintiff has offered, and hereby continues to offer, to reconvey the Property back to defendant."

[11] It appears from the record that the defendant failed to raise the issue of sufficient evidence of the condition precedent at trial, but he nonetheless filed a motion to set aside the verdict. See Practice Book § § 16-35 and 16-37. In his motion, he identified eight reasons why the verdict should be set aside, but none of the reasons was related to the condition precedent.

The court's memorandum of decision made no mention of exhibit twelve, and the court made no finding that the plaintiff had proven the condition precedent to rescission. The defendant did not file a motion for articulation in that regard. It also appears that the defendant did not bring the question of insufficient evidence to the court's attention, by way of a motion directed toward the verdict, either before or after the court rendered judgment. Although the court did not make an express finding that the plaintiff had offered to reconvey the premises to the defendant, we presume, in the absence of an articulation, that it must have made the requisite finding before concluding that the plaintiff had rescinded the contract. See *Zadravecz* v. *Zadravecz*, 39 Conn. App. 28, 32, 664 A.2d 303 (1995) (in absence of articulation, we presume court acted properly). We have no way of knowing, however, whether the court considered exhibit twelve in coming to its conclusion. The record is inadequate for our review.

"It is well established that [i]t is the appellant's burden to provide an adequate record for review. . . . It is, therefore, the responsibility of the appellant to move for an articulation or rectification of the record where the trial court has failed to state the basis of a decision . . . to clarify the legal basis of a ruling . . . or to ask the trial judge to rule on an overlooked matter. . . . In the absence of any such attempts, we decline to review this issue." (Internal quotation marks omitted.) *Schoonmaker* v. *Lawrence Brunoli, Inc.*, 265 Conn. 210, 232, 828 A.2d 64 (2003); see also Practice Book §§ 60-5 and 66-5.

Secondarily, on appeal, the defendant has argued that exhibit twelve was admitted into evidence improperly. He has failed, however, to provide any legal authority or analysis to support his argument. "We are not required to review issues that have been improperly presented to this court through an inadequate brief.

. . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . We will not review claims absent law and analysis." (Citation omitted; internal quotation marks omitted.) *In re Dorrell R.*, 64 Conn. App. 455, 469, 780 A.2d 944 (2001).

### 2

The defendant's next set of claims asserts that it was improper for the court to deny his motions for a mistrial. The defendant made an oral motion for a mistrial following final arguments to the jury and filed a motion for a mistrial during the remedy phase of the trial. Neither of the defendant's claims are persuasive.

### a

The defendant claims that the court abused its discretion by denying his oral motion for a mistrial made at the conclusion of closing arguments to the jury. The defendant had argued that a mistrial should be declared because during rebuttal argument, the plaintiff's counsel referred to a fact that was not in evidence. Although we agree that a portion of the rebuttal argument made by the plaintiff's counsel was improper, the court did not abuse its discretion by denying the motion for a mistrial.

The following facts are relevant to our review of the defendant's claim. During the trial to the jury, the plaintiff testified that she learned that a portion of the deck had been constructed on her neighbor's property. The neighbor, Frank Columbo, had threatened to bring legal action if she constructed the three season room on the footprint of the deck. During his closing argument, counsel for the defendant asked the jury to draw an adverse inference from the fact that the plaintiff failed to call Columbo to testify that he had threatened to bring an action against the plaintiff. During his rebuttal

argument, the plaintiff's counsel told the jury that Columbo was not called to testify because he was dead. Counsel for the defendant objected at the time because there was no evidence before the jury that Columbo was dead. The court responded that the jury would determine the evidence in the case.

Counsel for the defendant filed a motion for a mistrial at the close of final arguments on the basis of the plaintiff's counsel having argued facts that were not in evidence. The court denied the motion for a mistrial and explained its reason for responding to the objection as it did. The court stated that from the beginning of the trial, during conferences in chambers, Columbo's death had been discussed, and the court could not recall whether the fact that the man was dead had been put into evidence. In denying the motion for a mistrial, the court offered to instruct the jury to disregard that portion of the rebuttal argument and, in fact, did so.[12]

The defendant raised the issue again in his motion to set aside the verdict. In denying the motion to set aside the verdict, the court noted that it was inappropriate for the plaintiff's counsel to tell the jury that Columbo was dead and that that portion of counsel's argument was testimonial in fashion, but the court also observed that the defendant's counsel had not come to the issue with perfectly clean hands. The court commented that whether Columbo was dead and whether he had threatened to bring an action against the plaintiff was not the main issue in the case.

On appeal, counsel for the defendant has argued that by informing the jury that Columbo was dead, the plain-

---

[12] The court instructed the jury: "Now, there was a remark in final argument of [the plaintiff's counsel] to the suggestion when it was raised in defense's preceding argument about the presence or absence of Mr. Columbo, the neighbor. There is no evidence in the case with regard to the whereabouts, or living or death of Mr. Columbo, and you are to give no weight whatsoever to the statement [the plaintiff's counsel] made. Just strike that from your mind."

tiff's counsel made the defendant's counsel look bad in the eyes of the jury. He further argued that at the time of trial, he did not know for a fact that Columbo was dead, as the plaintiff's counsel had done nothing more than say so. The defendant has failed, however, to provide any indication that the jury did not abide by the court's curative instruction to strike the comments of the plaintiff's counsel about Columbo.

The defendant relies on the law concerning prosecutorial misconduct during closing argument to support his claim that the court improperly failed to grant his motion for a mistrial on the basis of the plaintiff's improper rebuttal argument. The law regarding prosecutorial misconduct does not apply to this civil action.

"A well established rule is that a statement by counsel, not under oath, of a material fact pertinent to the issues unsupported by evidence, and prejudicial to the opposing party, constitutes reversible error unless it appears that the prejudicial effect has been effectively averted by an instruction to disregard the statement, or otherwise. . . . It is the duty of [this court] to weigh the probable effect of the statement upon the issues of the case, then look to the action of the trial court in dealing with it, and if it is reasonably clear that the effect has not been eliminated, reversal is required." (Internal quotation marks omitted.) *Fonck* v. *Stratford*, 24 Conn. App. 1, 3, 584 A.2d 1198 (1991). Here, the court issued a curative instruction, and we presume, in the absence of any indication to the contrary, that the jury followed the court's instruction. See *Harrison* v. *Hamzi*, 77 Conn. App. 510, 524, 823 A.2d 446, cert. denied, 266 Conn. 905, 832 A.2d 69 (2003).

We agree with the court's observation that the defendant did not come to the argument on his motion for a mistrial with the cleanest of hands, having asked the jury to speculate as to why the plaintiff had not called

Columbo to testify. Although the plaintiff's counsel did not present him with a death certificate, the defendant's counsel had been informed that Columbo was dead. We expect that the members of the bar, in the presence of the court, will make accurate statements of fact in accordance with the code of professional conduct. See Rules of Professional Conduct 3.3 and 3.4. If the defendant's counsel had doubted Columbo's death, he could have conducted an investigation, which he in fact had undertaken by the time the motion to set aside the verdict was heard by the court. Although the defendant chose to use the inapplicable prosecutorial misconduct model as the basis of his argument, we follow the admonition that applies in equity. "[T]he equity court will not lend him its jurisdiction to right a wrong of which he himself is the author. 1 Story, Equity Jurisprudence (14th Ed.) 98." (Internal quotation marks omitted.) *Jacobs* v. *Fazzano*, 59 Conn. App. 716, 730, 757 A.2d 1215 (2000).

Furthermore, we conclude that the defendant was not prejudiced by the rebuttal argument, as we agree with the court's observation that Columbo's threat of litigation was not a central issue in the case. The central issue was whether the defendant had misrepresented the size of the premises and whether the plaintiff would have purchased the premises had she known the actual size of the property. The plaintiff testified that she did not get what she paid for. The threat of a lawsuit may have been the reason that she did not build the three season room, but the jury reasonably could have inferred that she sought to rescind the contract because the defendant misrepresented the size of the premises and failed to produce the 1987 survey.

We conclude that the court did not abuse its discretion by denying the defendant's motion for a mistrial or his motion to set aside the verdict.

b

The defendant also claims that it was improper for the court to deny his motion for a mistrial on the ground that the court had solicited additional evidence from the plaintiff after the conclusion of the remedies portion of the trial. The defendant argues that in doing so, the court violated canons 3 (a) (4)[13] and (c) (1)[14] of the Code of Judicial Conduct. We do not agree.

The following facts are relevant to our resolution of the defendant's claim. Following their presentation of

[13] Canon 3 of the Code of Judicial Conduct provides in relevant part that "[t]he judicial duties of a judge take precedence over all the judge's other activities. Judicial duties include all the duties of that office prescribed by law. In the performance of these duties, the following standards apply:

"(a) Adjudicative Responsibilities. . . .

"(4) A judge should accord to every person who is legally interested in a proceeding, or that person's lawyer, full right to be heard according to law. A judge shall not initiate, permit or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding except that:

"(A) Where circumstances require, ex parte communications for scheduling, administrative purposes or emergencies that do not deal with substantive matters or issues on the merits are authorized; provided:

"(i) the judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the ex parte communication, and

"(ii) the judge makes provision promptly to notify all other parties of the substance of the ex parte communication and allows an opportunity to respond. . . .

"(E) A judge may initiate or consider any ex parte communications when expressly authorized by law to do so."

[14] Canon 3 of the Code of Judicial Conduct provides in relevant part that "[t]he judicial duties of a judge take precedence over all the judge's other activities. Judicial duties include all the duties of that office prescribed by law. In the performance of these duties, the following standards apply . . .

"(c) Disqualification.

"(1) A judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:

"(A) the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding . . . ."

evidence during the rescission and restitution phase of the trial, the parties rested on February 11, 2002. Subsequent to that date, the court wrote letters to counsel for the parties, one dated March 6, 2002.[15] The names and addresses of both counsel were included as the inside address of the letter. In the letter, the court stated that it was unclear whether the " 'pay-off' " amount of the plaintiff's evidence was in evidence and, if so, what that amount might be.[16]

On March 12, 2002, the defendant filed a motion for a mistrial on the basis of the court's asking counsel whether certain evidence had been introduced. The defendant noted that the burden was on the plaintiff to prove her case by a preponderance of the evidence and that it was not the court's role to advise the plaintiff if evidence was lacking. The defendant claimed that such conduct on the part of the court raised the appearance of impropriety.

In response to the defendant's motion for a mistrial, the plaintiff filed an objection, noting, among other things, that the plaintiff's mortgage loan statement was in the record indicating the principal balance due as of

[15] The court also sent both counsel a letter dated April 3, 2002. In that letter, the court informed the parties that it wanted to hold one more hearing to obtain the current amount of the principal and interest payments the plaintiff has paid on her mortgage, to reconstruct the plaintiff's tax savings and to determine whether interest lies on the debt. The defendant did not object to the April 3, 2002 correspondence of the court.

[16] In its letter, the court stated: "This court has heard frequent mention of the potential relevance of a dollar figure necessary to finally settle up with plaintiff's mortgage lender upon a reconveyance of the property. The court wishes to be apprised as to whether it is in the evidence and if not, as the court suspects, a submission thereof is sought. If it is proffered in the form which garners no defendant's dispute as to amount, it will be taken into evidence. If plaintiff deems it unnecessary, an explanation would be in order. It may be that a 'pay-off' figure is discernible from evidence already existing, such as if one subtracts principal payments made from original principal borrowed. Please advise soonest."

November, 2001.[17] The plaintiff also explained that the principal balance was not critical to the court's decision, as the amount of restitution was the purchase price. The amount needed to pay off the mortgage would be determined at the time the plaintiff reconveyed the premises to the defendant. At that time, the plaintiff would pay her mortgage in full and retain the balance. Although the plaintiff took the position that the balance due on the mortgage was not relevant to the issue of rescission and restitution, she argued that it was not improper for the court to request such information as several months had passed since the court had heard the evidence.

The court denied the defendant's motion for a mistrial, noting that this was a trial to the court conducted over a number of nonconsecutive days. In addition, when a case is tried to the court, the court is permitted to ask questions.

To prevail on a claim of a violation of canon 3 (c) (1), a party need not show actual bias. A party "has met its burden if it can prove that the conduct in question gave rise to a reasonable appearance of impropriety." *Abington Ltd. Partnership* v. *Heublein,* 246 Conn. 815, 820, 717 A.2d 1232 (1998). Appellate courts "use an objective rather than a subjective standard in deciding whether there has been a violation of canon 3 (c) (1). Any conduct that would lead a reasonable [person] knowing all the circumstances to the conclusion that the judge's impartiality might reasonably be questioned is a basis for the judge's disqualification. Thus, an impropriety or the appearance of impropriety . . . that would reasonably lead one to question the judge's impartiality in a given proceeding clearly falls within

---

[17] On the basis of our review of the record, including the exhibits filed during trial, we agree with the plaintiff's representation that the balance due on the mortgage as of November, 2001, was in evidence.

the scope of the general standard . . . . The question is not whether the judge is impartial in fact. It is simply whether another, not knowing whether or not the judge is actually impartial, might reasonably question his . . . impartiality, on the basis of all of the circumstances." (Internal quotation marks omitted.) Id.

After considering all of the circumstances in the case, we conclude that it was not improper for the court to deny the defendant's motion for a mistrial and that the court's conduct at issue did not create an appearance of partiality. First, the defendant did not raise his claim of ex parte communication in the trial court. Under no circumstances, however, could this court consider a joint letter to counsel for the parties ex parte communication. No party was excluded from the communication. As to the defendant's claim that the court was helping the plaintiff by requesting evidence to prove her cause of action, that is not the case. More than anything, the court was asking for a clarification of what facts were in evidence. It also asked the plaintiff to explain why, as a matter of law, the balance due on a mortgage loan was not relevant to the question of restitution. For those reasons, we conclude that the court did not abuse its discretion by denying the defendant's motion for a mistrial.

C

The defendant's last claim on appeal is that it was improper for the court to award the plaintiff attorney's fees that were in excess of the limit stated in her retainer agreement. The defendant has failed to provide any legal analysis of his claim, and we deem it abandoned. See *State* v. *Hanson*, 75 Conn. App. 140, 141 n.3, 815 A.2d 139 (2003).

II

PLAINTIFF'S CROSS APPEAL

In her cross appeal, the plaintiff claims that the court improperly calculated the restitution due her by (1)

crediting the defendant with the benefit she received by deducting the interest she paid on the mortgage loan on her income tax returns and (2) denying her prejudgment interest after the jury returned its verdict but before the court rendered judgment. We agree with the plaintiff and reverse the judgment of the trial court with respect to the amount of restitution and prejudgment interest.[18]

The following facts are relevant to the plaintiff's cross appeal. The plaintiff discovered the defendant's misrepresentation in August, 1995. She commenced her action against the defendant on October 4, 1995. The liability aspect of the case was tried to the jury in March, 2001, and the jury returned its verdict on March 23, 2001. The parties tried the remedies portion of the case to the court on four days: July 16 and October 29, 2001, and February 11 and April 11, 2002. The majority of the evidence was presented by October 29, 2001. At that time, the defendant claimed that he was entitled to the benefit of the income tax deductions taken by the plaintiff for the interest she paid on her mortgage. The plaintiff objected to the presentation of such evidence, particularly without expert testimony, and noted that, to date, the defendant had not disclosed an expert in that regard. As a consequence thereof, the plaintiff argued that the defendant should not be permitted to present additional evidence. The court informed counsel, by means of a letter, that it would credit the defendant with the plaintiff's tax savings, but that it could not do so without the benefit of expert evidence. Scheduling conflicts interfered with the progress of the evidence. The court finally heard evidence regarding the plaintiff's tax savings on February 11 and April 11, 2002.

---

[18] In addressing the issues in the plaintiff's cross appeal, we note the paucity of legal research in the briefs of both parties. In fact, at oral argument before this court, the parties represented that there was no Connecticut case law that addressed the plaintiff's claim with respect to prejudgment interest.

By way of a memorandum of decision filed April 24, 2002, the court rendered judgment. The court's memorandum of decision contained numerous findings and statements of law in addition to its discussion of the form of restitution it considered equitable in this case. The court decided, in part, that the defendant should receive credit for the benefit the plaintiff received for itemizing her mortgage interest payments on her tax returns. The court also concluded that the plaintiff was entitled to prejudgment interest, but that it would not award prejudgment interest for the interval between the jury's verdict and the court's judgment. The plaintiff claims that the court's judgment as to those two matters was improper. We agree.

A

We first turn our attention to the plaintiff's claim that it was improper for the court to credit the defendant with the income tax deductions that the plaintiff took for interest paid on the mortgage loan for the premises. Furthermore, the plaintiff argues that if the court is permitted to credit the defendant with the benefit of her income tax deductions, she should be credited with the benefit he received for the use of her purchase money. We agree that the court should not have credited the defendant with any benefit the plaintiff may have received by deducting her mortgage interest payments on her income tax returns.

Rescission and restitution are equitable remedies. See *United Coastal Industries, Inc.* v. *Clearheart Construction Co.*, 71 Conn. App. 506, 513, 802 A.2d 901 (2002) (" 'claim for restitution is equitable in nature' "); *Kim* v. *Magnotta*, supra, 49 Conn. App. 222 (discussing "equitable remedy of rescission"). "The remedy of rescission and restitution is an alternative to damages in an action for breach of contract. . . . Rescission, simply stated, is the unmaking of a contract. It is a

renouncement of the contract and any property obtained pursuant to the contract, and places the parties, as nearly as possible, in the same situation as existed just prior to the execution of the contract." (Citation omitted.) *Kavarco* v. *T.J.E., Inc.*, supra, 2 Conn. App. 299. Restitution is "[a]n equitable remedy under which a person is restored to his or her original position prior to loss or injury, or placed in the position he or she would have been, had the breach not occurred." Black's Law Dictionary (6th Ed. 1990).

"This court will reverse a trial court's exercise of its equitable powers only if it appears that the trial court's decision is unreasonable or creates an injustice. . . . [E]quitable power must be exercised equitably . . . [but] [t]he determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court." (Internal quotation marks omitted.) *Thompson* v. *Orcutt*, 70 Conn. App. 427, 435, 800 A.2d 530, cert. denied, 261 Conn. 917, 806 A.2d 1058 (2002).

"In the absence of a benefit to the defendant, there can be no liability in restitution; nor can the measure of liability in restitution exceed the measure of the defendant's enrichment. . . . These requirements for recovery of restitution are purely factual. . . . Because recovery is fact bound, our review is limited to the clearly erroneous standard." (Citations omitted; internal quotation marks omitted.) *United Coastal Industries, Inc.* v. *Clearheart Construction Co.*, supra, 71 Conn. App. 512.

Restitution was a remedy at common law. The Restatement of Restitution provides in relevant part: "(1) A person under a duty to another to make restitution of property received by him or of its value is under a duty (a) to account for the *direct product* of the subject matter received while in his possession . . . ."

(Emphasis added.) Restatement, Restitution § 157, p. 621 (1937). "The phrase 'direct product' means that which is derived from the ownership or possession of the property without the intervention of an independent transaction by the possessor. Thus a person who has a duty to make restitution of the title to land is under a duty to restore amounts received by him as rent upon a lease existing before he acquired the title. Likewise a person who has received corporate shares or bonds would have a duty to account for the dividends received from the shares of interest upon the bonds. This product is to be distinguished from the profits made by the holder of the subject matter through its use or through renting the property to a third person. Thus a person who, being subject to a duty to account for money, lends it to a third person and receives interest thereon, does not receive the interest as the direct product of the money as this phrase is used herein." Id., comment (b), pp. 621–22.

Connecticut, as well as other jurisdictions,[19] has recognized the direct product rule. "The very idea of rescinding a contract implies that what has been parted with shall be restored on both sides, and hence the general rule, which is to be reasonably applied . . . is that a party who wishes to rescind a contract must place the opposite party in statu[s] quo. 17 Am. Jur. 2d, Contracts § 512, p. 994." (Internal quotation marks omitted.) *Metcalfe* v. *Talarski*, 213 Conn. 145, 153, 567 A.2d 1148 (1989).

[19] See, e.g., *McCoy* v. *West*, 70 Cal. App. 3d 295, 138 Cal. Rptr. 660 (1977) (absent proof that buyers made profit while in possession of commercial property prior to rescission, sellers not entitled to setoff in amount of reasonable rental value); *EarthInfo, Inc.* v. *Hydrosphere Resource Consultants, Inc.*, 900 P.2d 113, 115 (Colo. 1995) (proper measure of restitution for partial rescission of contract was disgorgement of plaintiff's profits, but court erred by not giving credit to defendant for portion of profits attributable to defendant's effort, investment).

*Metcalfe* stated that "[w]hen specific restitution of land is decreed . . . the liability of the innocent occupier . . . depend[s] on whether he has *in fact* been enriched by its use. . . . G. Douthwaite, Attorney's Guide to Restitution p. 325." (Emphasis in original; internal quotation marks omitted.) *Metcalfe* v. *Talarski*, supra, 213 Conn. 154. "The Restatement of Restitution [supra] § 157, comment (d) states: 'If the recipient was not tortious and was not more at fault than the other, he is under no duty of paying for the value of the use unless he used the land, in which case he is required to pay the reasonable value of the use or *what he received therefrom*, at his election.' " (Emphasis added.) *Metcalfe* v. *Talarski*, supra, 154 n.2.

We conclude that the income tax deductions taken pursuant to the interest paid on a mortgage loan are not a benefit the plaintiff received from the premises. The interest payments flow from the plaintiff's having borrowed money from a third party and were not a direct product of her ownership of the premises. Our conclusion is supported by decisions of the United States Supreme Court that have concluded that tax deductions do not constitute income or profits. See *Randall* v. *Loftsgaarden*, 478 U.S. 647, 657, 106 U.S. 3143, 92 L. Ed. 2d 525 (1986),[20] quoting *United Housing Foundation, Inc.* v. *Forman*, 421 U.S. 837, 855, 95 S. Ct. 2051, 44 L. Ed. 2d 621 (1975) ("no basis in law for the view that the payment of interest, with its consequent deductibility for tax purposes, constitutes income or profits"). *"These tax benefits are nothing more than that which is available to any homeowner who pays interest on his mortgage."* (Emphasis added.) *United Housing Foundation, Inc.* v. *Forman*, supra, 855.

[20] See also *Bernstein* v. *Nemeyer*, 213 Conn. 665, 671–72, 570 A.2d 1641 (1990) ("[t]he United States Supreme Court held . . . that the receipt of tax benefits does not per se justify the denial of access to the remedy of rescission, when that remedy is otherwise warranted").

In *Randall*, the defendants, who had defrauded tax shelter investors, argued that any tax benefits the plaintiffs received under two federal securities acts should be treated as income and thus credited to the defendants when rescissory damages were calculated. Justice O'Connor, writing for the court, rejected the defendants' argument stating, "[g]eneralities such as these—which come to us unsupported by any instance in which a common law court treated tax benefits as consideration or property that must be returned or offset against the plaintiff's recovery in rescission—fall far short of the showing required to overcome the plain language of § 12 (2) [of the Securities Act of 1933]. Moreover, even at common law, it is quite likely that tax benefits would be ignored for purposes of a rescissory remedy. Under the direct product rule, the party seeking rescission was required to credit the party against whom rescission was sought only with gains that were the direct product of the property the plaintiff had acquired under the transaction to be rescinded: The phrase direct product means that which is derived from the ownership or possession of the property without the intervention of an independent transaction by the possessor. Restatement of Restitution [supra, § 157, comment (b)]." (Internal quotation marks omitted.) *Randall* v. *Loftsgaarden*, supra, 478 U.S. 658.

Because any benefit the plaintiff here may have derived from deducting her mortgage interest payments on her income tax returns was not the direct product of her ownership of the premises, the court improperly credited the defendant with the tax deduction in calculating the restitution due the plaintiff.

## B

The plaintiff's second claim on cross appeal is that the court improperly found that she was not entitled to prejudgment interest, pursuant to General Statutes

§ 37-3a,[21] from the date of the jury's verdict to the date the court rendered judgment. That issue is controlled by *Paulus* v. *LaSala*, 56 Conn. App. 139, 742 A.2d 379 (1999), cert. denied, 252 Conn. 928, 746 A.2d 789 (2000), which held that "[t]he date when the wrongful detention terminates is definitively known when judgment is rendered and cannot occur sooner." Id., 150.

As stated previously, the parties agreed to bifurcate the trial. The liability portion of the trial concluded in March, 2001, when the jury found that the defendant was liable to the plaintiff. Although the trial of the remedy portion of the case took only four days, those four days were spread out over more than one year. The court concluded that the plaintiff was entitled to prejudgment interest pursuant to § 37-3a, but not for the time between the verdict and the judgment because that period of time was caused, in part, by scheduling conflicts.

Although a court must weigh equitable considerations when deciding whether prejudgment interest should be awarded to a plaintiff, the date on which prejudgment interest is to begin and end is not founded on equitable principles. "The date the interest *begins* to run pursuant to § 37-3a is factual because it necessarily involves a determination of when the wrongful detention began. . . . The date when the wrongful detention terminates is definitively known when judgment is rendered and cannot sooner occur." (Citation omitted; emphasis in original.) Id.

In *Paulus*, Judge Dupont provided a detailed history, construction and application of § 37-3a. "Noncontractual interest on money wrongfully detained was not

---

[21] General Statutes § 37-3a provides in relevant part: "[I]nterest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable. . . ."

sanctioned at common law . . . but has long been awarded pursuant to statute in Connecticut." (Citation omitted.) Id., 147.

"The statute provides for an award of interest on money from the time money is wrongfully withheld. . . . Money remains due until it is paid. Until such time as the damages are ascertained and are actually ordered to be paid, they remain due. Until a trial is over and judgment is rendered for a plaintiff, a plaintiff cannot be sure of any recovery. The money may have been wrongfully detained prior to judgment, and it is deemed as such when judgment finally is rendered, in effect awarding interest retroactively, but interest cannot be due *and* payable until judgment is rendered." (Citation omitted; emphasis in original.) Id., 150–51.

The facts of *Paulus* encompass the concern articulated by the court in its memorandum of decision. In *Paulus*, the plaintiffs sued the defendants for failing to construct their home in a timely and proper manner. Id., 140. The case was tried to an attorney trial referee, who found in favor of the plaintiffs and recommended that prejudgment interest be awarded on a portion of the damages. Id., 140–41. The interest was to encompass the date the plaintiffs directed labor to cease until the date the trial began, April 28, 1993. Id., 142–43. Subsequent to the attorney trial referee's issuing his findings and award, the plaintiffs filed a motion to correct and took exceptions to the report. Id., 144. The defendants filed objections to the acceptance of the report. Id. The court disagreed with the attorney trial referee's finding that the termination date for prejudgment interest was the date trial began. Id., 142. The court concluded that prejudgment interest runs until the date of judgment, namely, January 20, 1998. Id. This court affirmed the trial court's judgment.

*Paulus* acknowledged that prior to its decision, no appellate court had held directly that prejudgment inter-

est under § 37-3a or its statutory ancestors runs to the date of judgment. Id., 149. It cited, however, a number of cases in which the rule was implied.[22] Id. *Paulus* holds that in situations in which there is an extended period between the time the finder of fact determines that money has been wrongfully detained and the time the court renders judgment, equity does not intervene to stop the accrual of interest. There is no reason a defendant in such cases cannot offer to settle the matter by means of a stipulated judgment to stem the running of interest.

On the cross appeal, the judgment is reversed as to the calculation of the restitution and prejudgment interest due the plaintiff and the case is remanded with direction to recalculate the restitution and prejudgment interest in accordance with this opinion. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

---

[22] *Paulus* stated that some courts imply that prejudgment interest runs to the date of judgment, such as "*Gionfriddo* v. *Avis Rent A Car System, Inc.*, 192 Conn. 301, 308, 472 A.2d 316 (1984); *Stoddard* v. *Sagal*, 86 Conn. 346, 350, 85 A. 519 (1912); or uphold an award of interest to the date of judgment where that is not the issue; *Chmielewski* v. *Aetna Casualty & Surety Co.*, 218 Conn. 646, 675–76, 591 A.2d 101 (1991) ('a trial court has discretion, under General Statutes § 37-3a, to award prejudgment interest on an arbitration award retroactively to some date prior *to the date of the trial court's judgment* affirming the award') . . . *Atlas* v. *Miller*, 20 Conn. App. 680, 684–85, 570 A.2d 219 (1990); or state it in dicta; *Lawrence* v. *New Hampshire Ins. Co.*, 29 Conn. App. 484, 497, 616 A.2d 806, cert. denied, 224 Conn. 923, 618 A.2d 528 (1992) (prejudgment interest may run from date of arbitration award to date trial court rendered judgment); or hold that prejudgment interest runs to the date of the judgment without referring to a statute. *Loomis* v. *Gillett*, 75 Conn. 298, 301, 53 A. 581 (1902); *Regan* v. *New York & New England R. R. Co.*, 60 Conn. 124, 142, 22 A. 503 (1891); *Parrott* v. *Housatonic R. R. Co.*, 47 Conn. 575, 576 (1880)." (Emphasis in original.) *Paulus* v. *LaSala*, supra, 56 Conn. App. 149–50.