DONALD S. WARMAN ET AL. *v.* ETHEL G. DELANEY

BALDWIN, C. J., MURPHY, SHEA, BORDON and TROLAND, Js.

Argued May 3—decided June 13, 1961

*E. Gaynor Brennan,* with whom, on the brief, were *Melvin M. Dichter* and *E. Gaynor Brennan, Jr.,* for the appellant (defendant).

*John J. Sullivan,* with whom was *William C. Strong,* for the appellees (plaintiffs).

TROLAND, J. In April, 1955, the plaintiffs, husband and wife, were desirous of purchasing a new home, in Darien. Their attention was drawn to the residence of the defendant by a real estate broker.

They were not familiar with this property. The plaintiff Eleanore Warman first looked at it in the middle of a week in April, 1955, when the defendant showed her the interior of the house. Thereafter, Eleanore reported her interest in the house to her husband, and on the following Saturday they came to examine the property together. After they had looked over the interior of the house, they joined the defendant on the lawn on the easterly side of the property. They then walked around the property. The defendant at this time knew that the plaintiffs were prospective purchasers.

The defendant and her husband had acquired the property several years before. He died in 1954, and the defendant became the sole owner and occupier of it. During the period of her ownership, the lawn on the easterly side of the property was in substantially the same condition and presented substantially the same appearance as at the time she showed it to the plaintiffs. She pointed out to the plaintiffs a definite marker for the northwestern corner of her property and for the southern boundary. The house faces east. As the plaintiffs and defendant approached the easterly side of the property, it appeared as a mowed, well-kept grass area extending from the front of the house to uncultivated woods and undergrowth. The area included flower beds, a woodpile, a flagstone walk leading from the driveway turn-around to the woodpile, a clothesline screened by rustic fencing to the right of the flagstone steps, and some trees, including several small fruit trees, and flowers. The distance from the front of the house to the undergrowth is fifty-four and four-tenths feet. There was no marker or monument on the lawn indicating the easterly boundary. When the parties had

arrived and were in front of the house, the plaintiff Donald Warman asked the defendant, "Where is the boundary line on this side of the house?" and the defendant replied, in the hearing of the plaintiffs, "Where the lawn ends," or "At the edge of the grass." This statement and the visible conditions led the plaintiffs to believe that all of the easterly lawn area, with the improvements thereon, was owned by the defendant. The defendant also stated, with reference to two fruit trees within the lawn area, "I planted them myself." No other representations were made as to the boundary on the easterly side of the property.

The plaintiffs were pleased with the house and grounds and particularly the lawn area as it appeared to be. In making the statements, the defendant had no intent to deceive or defraud the plaintiffs. She believed her statements to be true, but she made them recklessly, in ignorance of the true facts and without any reasonable basis for the statements. A few days later, relying on the defendant's statements, the plaintiffs contracted to purchase the property for $55,000. The defendant knew or should have known that the plaintiffs were relying on her representations in purchasing the premises. Between the inspection of the premises and the taking of title, the plaintiffs did not cause a survey to be made, but relied solely on the defendant's representations as to the easterly boundary. There was no map on file in the town records of Darien showing the location of the house on the property.

Several months after the purchase, the plaintiffs learned that the woodpile, the flagstone steps, the turn-around, the place where the clothesline stood and the two fruit trees, all of which they had viewed and discussed with the defendant, were not on their

property. A survey then made showed that the easterly boundary was thirty feet nearer to the easterly side of the house than represented by the defendant. The description of the property in the contract between the parties and in the deed did not in fact embrace this thirty feet of improved area. The contract contained the following provision: "The purchaser further agrees that he has examined the premises, that he is fully satisfied with the physical condition thereof and that neither the seller nor any representative of the seller have made any representations or promise upon which the purchaser has relied covering the condition of the property covered by this sale, except as herein expressly set forth."

The trial court concluded that the representations of the defendant on which the plaintiffs relied were false and misleading and were made recklessly, under a belief in their truth for which there was no reasonable ground, and with intent to induce the plaintiffs to rely upon them, and that the defendant knew or should have known both that the plaintiffs were relying thereon and of the loss resulting to them from that reliance. These conclusions are amply supported by the facts found. Even though the defendant believed her representations to be true, if that belief was groundless the uttering of them to induce action on the part of the plaintiffs constituted a reckless deception of the plaintiffs, upon which they relied and acted to their damage. *Scholfield Gear & Pulley Co.* v. *Scholfield,* 71 Conn. 1, 19, 40 A. 1046; *O'Neill* v. *Conway,* 88 Conn. 651, 653, 92 A. 425; *Laukaitis* v. *Klikna,* 104 Conn. 355, 359, 132 A. 913; *Clark* v. *Haggard,* 141 Conn. 668, 672, 109 A.2d 358. We have heretofore held that "[i]n matters susceptible of actual knowledge, if

the party who has and is known to have the best means of knowledge, makes an affirmation contrary to the truth, in order to secure some benefit to himself, the law treats him as stating that he knows that whereof he affirms, and so as guilty of a fraud, although he spoke in ignorance of the facts; because he asserts that he knows what he does not know." *Scholfield Gear & Pulley Co.* v. *Scholfield,* supra; *Clark* v. *Haggard,* supra. It matters not that the plaintiffs had the opportunity to have the land surveyed. Their omission of a survey was a natural consequence of the fraudulent representations. *Presta* v. *Monnier,* 145 Conn. 694, 700, 146 A.2d 404; *Clark* v. *Haggard,* supra, 673; *Lovejoy* v. *Isbell,* 73 Conn. 368, 375, 47 A. 682.

The defendant claims that the contract for the sale of the real estate constituted the entire obligation of the parties, that all terms set forth therein were fulfilled, and that accordingly there could be no fraud or deceit. In making such a claim, the defendant overlooks the fact that in this action the plaintiffs are not seeking to add to, subtract from or alter the terms of the written contract itself. They are claiming that they were induced to enter into the contract by misrepresentations of material facts. This action is concerned solely with material misrepresentation in the inducement of the contract. *Callahan* v. *Jursek,* 100 Conn. 490, 495, 124 A. 31.

There is no error.

In this opinion the other judges concurred.