## CHARLES G. GIBSON ET AL. *v.*
## JOHN CAPANO ET AL.
## (SC 15514)

Callahan, C. J., and Borden, Berdon, Norcott and Katz, Js.

Argued March 20—officially released July 22, 1997

*Edward J. Holahan, Jr.*, with whom, on the brief was *Kevin J. Gumpper*, for the appellants (plaintiffs).

*Alan R. Spirer*, for the appellees (named defendant et al.).

*Opinion*

NORCOTT, J. This appeal arises from a claim of innocent misrepresentation by the plaintiffs, Charles G. Gibson and Lois Gibson, against the defendants, John Capano and Maria Capano, in connection with the purchase of certain real property located in Norwalk. The Appellate Court reversed the trial court's judgment for the plaintiffs on the innocent misrepresentation claim and we granted the plaintiffs' petition for certification limited to review of the following question: "In order to impose liability on a seller of real estate for innocent misrepresentation, is specialized knowledge by the seller required?" *Gibson* v. *Capano*, 239 Conn. 902, 682 A.2d 1000 (1996). We conclude that we need not address the certified question because we affirm the judgment of the Appellate Court upon alternate grounds.

The opinion of the Appellate Court sets forth the following relevant facts that the jury reasonably could have found. "The defendants owned and resided in a house in Norwalk from 1980 until January 17, 1987. While the defendants resided in the house, [John Capano] performed extensive remodeling and redecorating, which gave him access to the inside of many of

the walls. On December 7, 1986, the plaintiffs entered into a binder agreement with the defendants for the purchase of the house. The agreement provided that the sale was conditioned on satisfactory building and termite inspections.[1] By December 12, 1986, both the building and termite inspections had been performed. As a result of the termite inspection, the plaintiffs learned that the house had earlier been treated for termites. The plaintiffs then asked the defendants about the nature and extent of the earlier termite treatment and whether the chemical chlordane had been used to treat the premises for the termites. [John Capano] replied: 'The only place that I saw any termite damage was in the area that I took the door out of that side wall of the dining room. There was slight damage in the area of the door sill. It started and stopped right there. It didn't go any further, and we did lots of work here. And that is the only place that I saw any damage.' With respect to the chlordane, the defendants told the plaintiffs that they did not have to worry about that because they had contacted the treating company and chlordane had not been used." *Gibson* v. *Capano*, 41 Conn. App. 548, 549–50, 676 A.2d 896 (1996).

The parties signed a contract for the purchase of the property dated January 5, 1987, which provided in part: "The Buyer further agrees that he has examined the premises and that he is fully satisfied with the physical condition thereof and that neither the Seller, nor any representative of the Seller has made any representation upon which the Buyer relies with respect to the condition of the property covered by this agreement, except as hereinbefore expressly set forth." The con-

---

[1] "The plaintiffs filed actions against Home Maintenance, Inc., claiming negligence in its inspection of the premises, and Carl Fritz, doing business as A & A Exterminating, claiming negligence in conducting its termite inspection of the premises. The plaintiffs settled those actions in exchange for total payments of $104,000." *Gibson* v. *Capano*, 41 Conn. App. 548, 550 n.1, 676 A.2d 896 (1996).

tract further provided: "This contract (including any schedules or any riders referred to in the body of this Contract and attached to and made a part of it) constitutes the entire Contract between the parties, and no oral statements or promises and no understanding not embodied in this Contract shall be of effect. Any modification shall be made only by an instrument signed by all parties."

"The plaintiffs purchased the house and later discovered extensive termite damage and that chlordane had been used. The plaintiffs brought a two count complaint alleging fraudulent misrepresentation and innocent misrepresentation. The jury returned a verdict for the defendants on the fraudulent misrepresentation count and in favor of the plaintiffs on the innocent misrepresentation count. The jury answered the following interrogatories concerning the innocent misrepresentation issue in the affirmative: 'Have the [plaintiffs] proven by a fair preponderance of the evidence all of the following: (1) The [defendants], in selling the property to the [plaintiffs], made a representation of material fact; (2) The representation was made for the purpose of inducing the [plaintiffs] to purchase the property; (3) The representation was not true; (4) The [plaintiffs] relied upon the misrepresentation; (5) The [plaintiffs] were justified in relying upon the representation?' " Id., 550–51.

The defendants appealed to the Appellate Court claiming, inter alia,[2] that the trial court improperly had

[2] The defendants also claimed that the trial court improperly: (1) denied their motion for judgment notwithstanding the verdict; (2) denied their motion for remittitur; (3) denied their motion to set aside the verdict; and (4) rendered judgment on the jury's verdict without deducting the amounts the plaintiffs received from settlement with the former defendants, Home Maintenance, Inc., and Carl Fritz. *Gibson* v. *Capano*, supra, 41 Conn. App. 549. Because the Appellate Court held that the trial court improperly denied the defendants' motion for a directed verdict, it did not reach their remaining claims.

denied their motion for a directed verdict regarding the claim of innocent misrepresentation. Id., 549. The Appellate Court reversed the judgment of the trial court and held that the defendants' motion for a directed verdict on the innocent misrepresentation claim should have been granted "because the plaintiffs failed to produce evidence that the defendants possessed a specialized knowledge of termite detection or determining termite damage or the use of pest control chemicals." Id., 554.[3] This certified appeal followed.

As a preliminary matter, we note that "[w]hile [t]he only issues we need consider [on appeal] are those squarely raised by the petition for certification, we have recognized that an appellee, in accordance with Practice Book § 3012 (a) (now § 4013 [a]), may present alternat[e] grounds upon which the judgment may be affirmed. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Hodge*, 201 Conn. 379, 382–83, 517 A.2d 621 (1986); see Practice Book § 4140. Accordingly, "we are not limited to the issues presented in the petition if the judgment of the Appellate Court may be affirmed on some other ground. . . ." (Citations omitted; internal quotation marks omitted.) *Rametta* v. *Stella*, 214 Conn. 484, 491 n.6, 572 A.2d 978 (1990). The defendants submit as an alternate ground for affirmance that the contract for the sale of the real property specifically disclaimed any claim of reliance by the plaintiffs on representations made by the defendants that were

---

[3] We express no comment regarding the Appellate Court's holding that the plaintiffs must demonstrate that the defendants possessed "specialized knowledge" in order to satisfy the justifiable reliance element of their innocent misrepresentation claim. We note, however, that, under the Restatement (Second) of Torts, the requirement of specialized knowledge is confined to representations of opinion rather than representations of fact. See 3 Restatement (Second), Torts § 542 (1977) (reliance on "the maker's opinion is not justified . . . unless the fact to which the opinion relates is material, and the maker . . . purports to have special knowledge of the matter that the recipient does not have").

not contained in the contract. Because we agree with the defendants that the contract language is dispositive of the plaintiffs' claim, we refrain from reaching the certified question.

In Connecticut, a claim of "innocent misrepresentation . . . is based on principles of warranty, and . . . is not confined to contracts for the sale of goods." *Johnson* v. *Healy*, 176 Conn. 97, 102, 405 A.2d 54 (1978); see also *Richard* v. *A. Waldman & Sons, Inc.*, 155 Conn. 343, 347, 232 A.2d 307 (1967); *E. & F. Construction Co.* v. *Stamford*, 114 Conn. 250, 259–60, 158 A. 551 (1932). A person is subject to liability for an innocent misrepresentation if "in a sale, rental or exchange transaction with another, [he or she] makes a representation of a material fact for the purpose of inducing the other to act or to refrain from acting in reliance upon it . . . even though it is not made fraudulently or negligently." 3 Restatement (Second), Torts § 552C (1977). We have held that an innocent misrepresentation is "actionable, even though there [is] no allegation of fraud or bad faith, because it [is] false and misleading, in analogy to the right of a vendee to elect to retain goods which are not as warranted, and to recover damages for the breach of warranty. . . ." (Citations omitted; internal quotation marks omitted.) *Johnson* v. *Healy*, supra, 101.

Our resolution of the plaintiffs' innocent misrepresentation claim, however, is guided by the general principles governing the construction of contracts. "It is established well beyond the need for citation that parties are free to contract for whatever terms on which they may agree. This freedom includes the right to contract for the assumption of known or unknown hazards and risks that may arise as a consequence of the execution of the contract. Accordingly, in private disputes, a court must enforce the contract as drafted by the parties and may not relieve a contracting party from anticipated or actual difficulties undertaken pursuant to the con-

tract, unless the contract is voidable on grounds such as mistake, fraud or unconscionability. See 1 Restatement (Second), Contracts §§ 154, 159, and vol. 2, § 208 (1981); cf. *Warner* v. *Pandolfo*, 143 Conn. 728, 122 A.2d 738 (1956)." *Holly Hill Holdings* v. *Lowman*, 226 Conn. 748, 755–56, 628 A.2d 1298 (1993).

Parties are free to bargain for disclaimer clauses in a contract for the sale of real property. Id. We have held that "[j]ust as the parties to a contract for the sale of goods are free to disclaim warranties; see General Statutes § 42a-2-316; the parties to a contract for the sale of real property are free to disclaim responsibility for known environmental risks. Indeed, the agreed upon contract price for the property typically reflects an allocation of the known risks that attend the ownership of property." *Holly Hill Holdings* v. *Lowman*, supra, 226 Conn. 756. In addition, in the absence of a claim of mistake, fraud or unconscionability, a clause disclaiming reliance by the buyer on the seller's representations is a valid contract term. See 2 Restatement (Second), Contracts § 196, comment (a) (1981);[4] 12 S. Williston, Contracts (3d Ed. 1970) § 1511, p. 467 ("[l]iability for innocent misrepresentation may be excluded by the express terms of the contract").

With these principles in mind, we proceed to analyze the plaintiffs' innocent misrepresentation claim in light of the terms of the contract for the sale of the property. Paragraph six of the contract provides in part that "neither the Seller, nor any representative of the Seller has made any representation upon which the Buyer relies with respect to the condition of the property covered by this agreement, except as hereinbefore expressly set

---

[4] Section 196 of the Restatement (Second) of Contracts (1981), provides: "A term unreasonably exempting a party from the legal consequences of a misrepresentation is unenforceable on public policy grounds." Comment (a) to § 196 clarifies that this rule does not "apply to language that prevents reliance by the recipient on a misrepresentation."

forth." This clause allocates the risk of loss resulting from the plaintiffs' reliance on the defendants' representations to the plaintiffs. It is well established that "[w]here the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms." (Internal quotation marks omitted.) *24 Leggett Street Ltd. Partnership.* v. *Beacon Industries, Inc.*, 239 Conn. 284, 295, 685 A.2d 305 (1996). The plaintiffs do not claim that there were any improprieties in the contract formation process. The parties were free to bargain for whatever warranties and terms they wished. The plaintiffs could have bargained for warranties or representations from the defendants to be included in the contract regarding the extent of termite damage and the nature of the treatment. We will not import terms into this agreement, however, that are not reflected in the contract. "It is axiomatic that courts do not rewrite contracts for the parties. . . ." (Citations omitted.) *Herbert S. Newman & Partners* v. *CFC Construction Ltd. Partnership*, 236 Conn. 750, 760, 674 A.2d 1313 (1996). We conclude that the clear and unambiguous disclaimer of warranties in the contract between the plaintiffs and the defendants must be given effect and that the plaintiffs' breach of warranty claim is precluded.

The plaintiffs nonetheless argue that they were induced into entering the contract by the defendants' misrepresentations and that therefore the disclaimer clause in the contract does not preclude their claim of innocent misrepresentation. The plaintiffs concede that they were aware that the property previously had been infested with termites and had been chemically treated. They contend, however, that they were misled about the extent of the termite damage and the particular chemical used in the extermination treatment. We disagree.

The plaintiffs rely on *Warman* v. *Delaney*, 148 Conn. 469, 172 A.2d 188 (1961), as support for their claim that they were induced into agreeing to the contract. In *Warman*, the seller misrepresented the boundaries of certain real property to the buyer of the property. We concluded that a seller's misrepresentations as to the boundaries of land to be sold, if made negligently or recklessly and relied upon by a buyer without conducting an independent survey, can support an award of damages even if the written contract constitutes the entire agreement of the parties, specifically disclaims any representations of the buyer as to the condition of the land, and contains a contrary description of the land. Id., 473–74. Because *Warman* involved a claim of fraudulent misrepresentation rather than innocent misrepresentation, however, we conclude that it is inapposite to the facts in the present case.

Rather, we agree with the defendants that our decision in *Holly Hill Holdings* v. *Lowman*, supra, 226 Conn. 753, governs our consideration of the plaintiffs' claim of inducement. In *Holly Hill Holdings*, we held that a party who purchases property "as is" could not thereafter maintain a claim based on an alleged nondisclosure of *known* facts. Id. In that case, the buyers, prior to agreeing to purchase the property, had actual knowledge of the existing underground gasoline storage tanks that were associated with the property's previous use as a service station. Id., 751. The buyers raised the seller's alleged failure to disclose the underground storage tanks as required by statute as a special defense and counterclaim in a subsequent foreclosure action. Id., 751–52. Because the buyers were aware of the property's prior use before entering into the contract, we rejected their argument that they were induced to agree to the clause because of the seller's misrepresentations. Id., 756–57.

Similarly, the plaintiffs in the present case were well aware that the property previously had been infested by termites and had been chemically treated by professionals. The plaintiffs hired an independent professional termite extermination expert to inspect the property and were informed that the premises had been infested and chemically treated. Before entering into the contract, the plaintiffs asked the defendants about the termite situation and were told that the house previously had been infested, that there was some damage, and that the house had been professionally treated. Despite their actual knowledge of the property's prior condition, the plaintiffs agreed to the clause in paragraph six of the contract that disclaimed their reliance on representations made by the defendants. "[W]here a party realizes he has only limited information upon the subject of a contract, but treats that knowledge as sufficient in making the contract he is deemed to have assumed the risk of a mistake." (Internal quotation marks omitted.) Id., 757; see 1 Restatement (Second), Contracts § 154 (1981). As in *Holly Hill Holdings*, the plaintiffs cannot now argue that they were induced to agree to the clause as a result of the defendants' misrepresentation.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.