ANDREA MARTINEZ ET AL. *v.* AMEDEO D. ZOVICH ET AL.
(AC 25166)

Foti, McLachlan and Hennessy, Js.

Argued December 1, 2004—officially released March 8, 2005

*Jacek I. Smigelski*, for the appellants (plaintiffs).

*James V. Somers*, with whom were *Carl R. Ficks, Jr.*, and, on the brief, *Jeffrey F. Gostyla*, for the appellee (named defendant).

*Opinion*

FOTI, J. The plaintiffs, Andrea Martinez and Madelyne Martinez-Ramos, appeal from the summary judgment rendered by the trial court in favor of the defendant Amedeo D. Zovich.[1] On appeal, the plaintiffs claim that the court improperly concluded that the defendant was entitled to judgment as a matter of law on the basis of a disclaimer clause in a contract for the sale of certain real property because they "asserted claims in tort on the theory of fraudulent or intentional misrepresentation or fraudulent or intentional omission of material facts." We agree and reverse the judgment of the trial court.

The pleadings and other documentary information presented to the court reveal the following facts and procedural history that are relevant to our resolution of this appeal. In April, 2002, the plaintiffs responded to a classified advertisement contained in The Herald, a newspaper circulated in New Britain, which stated: "New Britain, For sale By Owner, Walnut Hill Park area.

---

[1] The plaintiffs initiated this action on February 14, 2003, against Amedeo D. Zovich, Mary D. Zovich and the Connecticut Attorneys Title Insurance Company. Subsequent to the filing of the action, Mary Zovich, a resident of the state of California, filed a motion to dismiss the plaintiffs' complaint against her pursuant to Practice Book §§ 10-30 and 10-31, claiming that she was not properly served under this state's long arm statute, General Statutes § 52-59b. The plaintiffs did not object to Mary Zovich's motion, and the court granted the motion to dismiss on September 29, 2003. The Connecticut Attorneys Title Insurance Company is not a party to this appeal. Accordingly, we refer in this opinion to Amedeo D. Zovich as the defendant.

3 family with 2 car garage plus carport for 2 cars." The classified advertisement also listed the defendant's telephone number. When responding to the classified advertisement, the plaintiffs were informed by the defendant that the house on the property was a three-family dwelling. On or about June 15, 2002, the plaintiffs entered into a contract with the defendant for the purchase of the real property located at 37-39 Harrison Street in New Britain.

Paragraph six of the contract, entitled "INSPECTION OF PREMISES," provides in relevant part: "The Buyer represents that the Buyer has examined the Property, including fixtures and personal property included in the transaction, and is satisfied with the physical condition thereof, subject to the provisions of any inspections made a part of this Contract, if Buyer has elected to make a less than thorough inspection, Buyer waives any right to object to any defects in the Property that would have been disclosed by a full and complete inspection, Buyer further agrees that neither the Seller nor any agent of the Seller have made any representations or promises other than those expressly stated herein upon which the Buyer has relied in making this Contract. . . ."

Paragraph thirteen of the contract, entitled "COMPLETE AGREEMENT," provides: "This Contract contains the entire agreement between Buyer and Seller concerning this transaction, and supersedes any and all previous written or oral agreements concerning the Property. Buyer has made this Contract without relying upon any representations, information or promises made by Seller or any agent of the Seller that are not contained in this Contract as to the character, quality, use, zoning, value, condition, occupancy or other matters relating to the Property."

Paragraph twenty-one of the contract, entitled "OTHER/SPECIAL CONDITIONS," provides in relevant

part: "When signed by Buyer and Seller, this is intended to be a legally binding Contract. If either party has any questions about any aspect of this transaction, he/she should consult with an attorney before signing this Contract."

When the plaintiffs purchased the property, they were under the belief that the property contained a legal three-family house. Subsequently, the plaintiffs discovered that the property was only a legal two-family house.[2]

The plaintiffs initiated this action on February 14, 2003. By amended complaint, the plaintiffs alleged that the defendant intentionally and negligently misled them into purchasing the property by representing to them that the property contained a legal three-family house, when it was actually only a two-family house with an illegally converted attic space to make it appear that the property contained a legal three-family house. On September 9, 2003, the defendant filed his answer, special defenses and a three count counterclaim. The defendant then filed a motion for summary judgment on December 4, 2003, claiming that he was entitled to judgment as a matter of law based on the "unambiguous disclaimer provisions set forth in the contract executed by the plaintiffs . . . ."

The court, after noting that it could grant the defendant's motion for summary judgment on procedural grounds, addressed the merits of the motion.[3] On the

---

[2] The subject property originally contained two dwelling units. In September, 1989, the defendant applied for a variance with the New Britain zoning board of appeals, seeking permission to convert the attic space of the property into a third dwelling unit. Following a hearing, the zoning board of appeals granted the defendant's application on October 24, 1989. According to the plaintiffs' complaint, the defendant, without obtaining the proper permits, then converted the attic space into a third dwelling unit.

[3] The defendant filed his motion for summary judgment on December 4, 2003. The motion was scheduled to be heard at short calendar on January 5, 2004. The plaintiffs did not file their memorandum of law in opposition to the motion for summary judgment until January 2, 2004, three days before

basis of the "clear and unambiguous" language of the
contract, which included the disclaimer clause stating
that the plaintiffs did not rely on any representations
made by the defendant other than those expressly
stated in the contract, the court, relying primarily on
our Supreme Court's decision in *Gibson* v. *Capano*,
241 Conn. 725, 730–31, 699 A.2d 68 (1997), granted the
defendant's motion for summary judgment on January
7, 2004.

Subsequently, the plaintiffs filed a motion to open
the judgment and to reargue the decision of the court.
The plaintiffs' motion was denied on February 9, 2004,
and this appeal followed.

"Practice Book . . . [§ 17-49] provides that sum-
mary judgment shall be rendered forthwith *if the plead-
ings*, affidavits and any other proof submitted show
that there is no genuine issue as to any material fact
and that the moving party is entitled to judgment as a
matter of law. . . . In deciding a motion for summary
judgment, the trial court must view the evidence in the
light most favorable to the nonmoving party. . . . Our
review of the trial court's decision to grant [a] motion
for summary judgment is plenary." (Citation omitted;

the hearing. At the January 5, 2004 hearing, the defendant filed an objection to
the plaintiffs' memorandum of law in opposition to the motion for summary
judgment, relying on this court's decision in *Barile* v. *LensCrafters, Inc.*,
74 Conn. App. 283, 285–86, 811 A.2d 743 (2002).

In *Barile*, this court affirmed the judgment of the trial court granting the
defendant's motion for summary judgment on the ground that the plaintiff
failed to comply with Practice Book § 17-45. *Barile* v. *LensCrafters, Inc.*,
supra, 74 Conn. App. 286. We recognized that Practice Book § 17-45 provides
in relevant part that "[t]he adverse party *shall* at least five days before the
date the motion is to be considered on the short calendar file opposing
affidavits and other available documentary evidence." (Emphasis in original;
internal quotation marks omitted.) *Barile* v. *LensCrafters, Inc.*, supra, 286.

In the present case, because the defendant did not demonstrate that the
plaintiffs' delay in filing their memorandum of law in opposition to the
motion for summary judgment was prejudicial to his defense of the matter,
the court chose not to grant the defendant's motion on that procedural
ground.

emphasis in original; internal quotation marks omitted.) *Homecomings Financial Network, Inc.* v. *Starbala*, 85 Conn. App. 284, 290, 857 A.2d 366 (2004).

The defendant, relying primarily on our Supreme Court's decisions in *Gibson* v. *Capano*, supra, 241 Conn. 725, and *Holly Hill Holdings* v. *Lowman*, 226 Conn. 748, 628 A.2d 1298 (1993), argues that the court properly granted his motion for summary judgment because the plaintiffs' claims of misrepresentation are barred by the express language of the contract. The plaintiffs argue that the holdings of *Gibson* and *Holly Hill Holdings* are distinguishable, and, therefore, the court improperly granted the defendant's motion for summary judgment. We agree with the plaintiffs.

The factual situations in *Gibson* and *Holly Hill Holdings* are inapposite to the facts of the present case. In *Gibson* v. *Capano*, supra, 241 Conn. 726, the defendants owned a house in Norwalk. During the time that the defendants owned the house, John Capano performed extensive remodeling and redecorating in the house. Id. In December, 1986, the plaintiffs entered into a binder agreement with the defendants for the purchase of the house. Id., 727. Under the terms of the binder agreement, the sale of the house was conditioned on satisfactory building and termite inspections. Id. Following the inspections, the plaintiffs learned that the house had previously been treated for termites. Id. Thereafter, the plaintiffs asked the defendants "about the nature and extent of the earlier termite treatment and whether the chemical chlordane had been used to treat the premises for termites." Id. Capano informed the plaintiffs that he only observed termite damage in one area of the house and that chlordane was not used to eradicate the termites. Id.

Subsequently, the parties entered into a contract for the purchase of the house. Id. The contract provided

in relevant part: "The Buyer further agrees that he has examined the premises and that he is fully satisfied with the physical condition thereof and that neither the Seller, nor any representative of the Seller has made any representation upon which the Buyer relies with respect to the condition of the property covered by this agreement, except as hereinbefore expressly set forth." (Internal quotation marks omitted.) Id. The contract also provided that it constituted the entire agreement between the parties and that "no oral statements or promises and no understanding not embodied in this Contract shall be of effect." (Internal quotation marks omitted.) Id., 728.

Following the purchase of the house, the plaintiffs discovered, contrary to Capano's representations, that there had been extensive termite damage and that chlordane had been used to eradicate the termites. Id. Thereafter, the plaintiffs brought suit, alleging fraudulent and innocent misrepresentation. Id. Following a trial, the jury found for the plaintiffs on their claim of innocent misrepresentation. Id.

On appeal, our Supreme Court noted that its resolution of the appeal was guided by "the general principles governing the construction of contracts." Id., 730. The court stated: "It is established well beyond the need for citation that parties are free to contract for whatever terms on which they may agree. This freedom includes the right to contract for the assumption of known or unknown hazards and risks that may arise as a consequence of the execution of the contract. Accordingly, in private disputes, a court must enforce the contract as drafted by the parties and may not relieve a contracting party from anticipated or actual difficulties undertaken pursuant to the contract, *unless* the contract is voidable on grounds such as mistake, fraud or unconscionability. . . .

"Parties are free to bargain for disclaimer clauses in a contract for the sale of real property. . . . We have held that [j]ust as the parties to a contract for the sale of goods are free to disclaim warranties; see General Statutes § 42a-2-316; the parties to a contract for the sale of real property are free to disclaim responsibility for *known* environmental risks. Indeed, the agreed upon contract price for the property typically reflects an allocation of the *known* risks that attend the ownership of property. . . . In addition, in *the absence of a claim of* mistake, *fraud* or unconscionability, a clause disclaiming reliance by the buyer on the seller's representations is a valid contract term." (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 730–31.

The court, on the basis of the "clear and unambiguous disclaimer of warranties in the contract," held that the plaintiffs' breach of warranty claim was precluded. Id., 732. The court rejected the plaintiffs' reliance on *Warman* v. *Delaney*, 148 Conn. 469, 172 A.2d 188 (1961), because "*Warman* involved a claim of fraudulent misrepresentation rather than innocent misrepresentation . . . ." *Gibson* v. *Capano*, supra, 241 Conn. 733. Rather, the court held that its decision in *Holly Hill Holdings* v. *Lowman*, supra, 226 Conn. 753, governed its resolution of the case. In referencing its earlier decision in *Holly Hill Holdings*, the *Gibson* court stated: "In *Holly Hill Holdings*, we held that a party who purchases property 'as is' could not thereafter maintain a claim based on an alleged nondisclosure of *known* facts. . . . In that case, the buyers, prior to agreeing to purchase the property, had *actual knowledge* of the existing underground gasoline storage tanks that were associated with the property's previous use as a service station. . . . The buyers raised the seller's alleged failure to disclose the underground storage tanks as required by statute as a special defense and counterclaim in a

subsequent foreclosure action. . . . *Because the buyers were aware of the property's prior use before entering into the contract, we rejected their argument that they were induced to agree to the clause because of the seller's misrepresentations.*" (Citations omitted; emphasis added.) *Gibson* v. *Capano*, supra, 733. Accordingly, following its decision in *Holly Hill Holdings*, the court in *Gibson* rejected the plaintiffs' argument that they were induced to agree to the contract as a result of the defendants' misrepresentations because the plaintiffs, "*well aware* that the property previously had been infested by termites and had been chemically treated by professionals," still agreed to entered into the contract for the sale of the house, even though it contained a clause disclaiming their reliance on any representations made by the defendants. (Emphasis added.) Id., 734.

Thus, our Supreme Court's decisions in *Gibson* and *Holly Hill Holdings* relied on the fact that the plaintiffs had *actual knowledge* of the truth of the alleged misrepresentation prior to entering into the contract for the sale of property containing a clause disclaiming any reliance on any prior representations made by the defendants. In the present case, however, there has been no allegation that the plaintiffs had any prior knowledge that the house that they were purchasing was legally only a two-family dwelling, as opposed to the three-family dwelling that was represented to them.

Further, in *Gibson*, our Supreme Court was faced with a claim of innocent misrepresentation. In upholding the validity of the disclaimer clause, our Supreme Court stated: "[I]n the absence of a claim of mistake, *fraud* or unconscionability, a clause disclaiming reliance by the buyer on the seller's representations is a valid contract term." (Emphasis added.) Id., 731. Conversely, in the present case, the first count of the plaintiffs' complaint stated that the defendant's *fraudulent*

misrepresentations induced them to enter into the contract.

This case is further distinguishable from *Holly Hill Holdings* by the fact that in that case, in addition to the buyers having actual knowledge prior to entering into the contract that the property they intended to purchase contained underground gasoline storage tanks, the disclaimer clause was *not* boilerplate language contained in the preprinted contract; rather, the clause "was explicitly added to a preprinted contract form during the negotiations for the sale of the property." *Holly Hill Holdings* v. *Lowman*, supra, 226 Conn. 756. In the present case, however, the disclaimer clause was merely part of the preprinted contract that the parties executed. Accordingly, the defendant's reliance on *Gibson* and *Holly Hill Holdings* is misplaced.

The crux of this appeal is whether the disclaimer clause in the contract prevented the plaintiffs from bringing this action. We conclude that it did not.

In *Foley* v. *Huntington Co.*, 42 Conn. App. 712, 682 A.2d 1026, cert. denied, 239 Conn. 931, 683 A.2d 397 (1996), the plaintiff entered into a contract with the defendants for the purchase of a nursing home in Fairfield. Id., 715. Under the terms of the contract, the sale was for 3.74 acres of land. Id. The nursing home was located on a 10.09 acre tract of land. Id. The plaintiff subsequently learned that the 3.74 acres of land that the nursing home would occupy was in violation of Fairfield's zoning requirements. Id., 716. The plaintiff then brought suit alleging, inter alia, negligent and fraudulent misrepresentation. Id., 718. Following a trial, the jury found in favor of the plaintiff on the negligent misrepresentation claim and in favor of the defendants on the fraudulent misrepresentation claim. Id., 719. The defendants moved for a directed verdict, which was denied, as it related to their claim that there was insuffi-

cient evidence from which the jury could find negligent misrepresentation. Id., 720. The trial court concluded "that there was sufficient evidence to uphold the jury's finding of negligent misrepresentation because there was evidence that [the defendant] told the plaintiff before the contract was signed that the defendants would sell enough land to [the plaintiff] so that he could operate the nursing home." Id., 721. The defendants also argued to the trial court that, because the jury found the contract to be fully integrated, "any prior representations could not be used to supersede the contract." Id. The trial court, relying on our Supreme Court's decision in *Warman* v. *Delaney*, supra, 148 Conn. 469, rejected the defendants' claim. *Foley* v. *Huntington Co.*, supra, 721.

On appeal, we rejected the defendants' argument that because "no representations or warranties concerning zoning compliance [were] in the contract . . . [the] statement that [the defendants] would sell the plaintiff enough land to operate the nursing home could not have induced the plaintiff to enter into the contract." Id. In rejecting the defendants' claim, we relied on *Warman*, stating: "A misrepresentation by a seller as to the boundaries of land to be sold, if made negligently or recklessly and relied upon by a buyer without conducting an independent survey, *can support an award of damages even if the written contract constitutes the entire agreement of the parties and the contract specifically disclaims any representations of the seller as to the condition of the land and contains a contrary description of the land.*" (Emphasis added.) Id., 721–22.

As in *Foley*, we conclude that the situation presently before us is analogous to the situation before our Supreme Court in *Warman* v. *Delaney*, supra, 148 Conn. 469. In *Warman*, the plaintiffs were interested in purchasing the defendant's house in Darien. Id., 470. When the plaintiffs looked at the defendant's property, they

asked the defendant where the property boundary was on the easterly side of the house. Id., 472. The defendant responded that the property ended "[w]here the lawn ends" or "[a]t the edge of the grass." (Internal quotation marks omitted.) Id. The plaintiffs, relying on the defendant's representation, purchased the property. Id. The contract contained the following provision: "The purchaser further agrees that he has examined the premises, that he is fully satisfied with the physical condition thereof and that neither the seller nor any representative of the seller have made any representations or promise upon which the purchaser has relied covering the condition of the property covered by this sale, except as herein expressly set forth." (Internal quotation marks omitted.) Id., 473. Subsequently, the plaintiffs learned that the property boundary was thirty feet closer to the house than the defendant had represented and brought suit. Id.

The trial court found that the plaintiffs relied on the defendant's representations as to the boundary line and that the representations were "false and misleading and were made recklessly, under a belief in their truth for which there was no reasonable ground . . . ." Id. Our Supreme Court affirmed the judgment of the trial court. Id. In rejecting the defendant's claim that the contract prevented the plaintiffs' action because the contract constituted the entire obligation of the parties, our Supreme Court stated: "The defendant overlooks the fact that in this action the plaintiffs are not seeking to add to, subtract from or alter the terms of the written contract itself. They are claiming that they were induced to enter into the contract by misrepresentations of material facts. This action is concerned solely with material misrepresentation in the inducement of the contract." Id., 474; see *Richard* v. *A. Waldman & Sons, Inc.*, 155 Conn. 343, 347, 232 A.2d 307 (1967); *Callahan* v. *Jursek*, 100 Conn. 490, 495, 124 A. 31 (1924).

In this case, the court's decision was based solely on the language of the disclaimer clause contained in the contract. To construe the terms of the contract as the defendant requests us to do would violate public policy. *Callahan* v. *Jursek*, supra, 100 Conn. 496. The plaintiffs' complaint alleged that they entered into the contract for the purchase of the property based on the defendant's intentional and negligent misrepresentations as to the nature of the property. A cause of action for intentional misrepresentation is essentially a claim of fraud. See *Statewide Grievance Committee* v. *Egbarin*, 61 Conn. App. 445, 454, 767 A.2d 732, cert. denied, 255 Conn. 949, 769 A.2d 64 (2001). It has long been held in this state that "[f]raud vitiates all contracts, written or otherwise . . . ." *Harold Cohn & Co.* v. *Harco International, LLC*, 72 Conn. App. 43, 49, 804 A.2d 218, cert. denied, 262 Conn. 903, 810 A.2d 269 (2002). Accordingly, fraud cannot be contracted against. *Ford* v. *Dubiske & Co., Inc.*, 105 Conn. 572, 576, 136 A. 560 (1927).

For purposes of summary judgment and this appeal, the court views the evidence in the light most favorable to the plaintiffs. According to the plaintiffs' complaint, the defendant represented to the plaintiffs that the property being sold was a three-family dwelling, when in fact it was only a two-family dwelling with an illegally converted attic to make it appear to be a legal three-family dwelling. The plaintiffs were unaware of the true nature of the property when they entered into the contract, and they only entered into the contract because of the defendant's misrepresentations. A claim that a seller's intentional, reckless or negligent misrepresentations caused a buyer to enter into a contract for the sale of property is a valid cause of action, even if the contract that the parties entered into constituted the entire agreement between the parties and the contract included a clause disclaiming any representations by the seller as to the condition of the property. *Foley* v.

*Huntington Co.*, supra, 42 Conn. App. 721–22. Accordingly, the court improperly granted the defendant's motion for summary judgment.

The judgment is reversed and the case is remanded for further proceedings in accordance with law.

In this opinion the other judges concurred.