MYRA KRAMER ET AL. *v.* ROBERT J.
PETISI ET AL.
(SC 17549)

Borden, Norcott, Katz, Palmer and Zarella, Js.*

Argued October 19, 2006—officially released February 26, 2008

* The listing of justices reflects their seniority status as of the date of oral argument.

*Hugh D. Hughes*, with whom, on the brief, were *William F. Gallagher* and *Barbara L. Cox*, for the appellant (named plaintiff).

*Laura Pascale Zaino*, with whom, on the brief, was *Thomas J. Hagarty, Jr.*, for the appellees (defendant Patricia Abagnale et al.).

*Opinion*

PALMER, J. The named plaintiff, Myra Kramer,[1] commenced this action against Patricia Abagnale, a real estate agent, and Abagnale's employer, Country Living Associates, Inc., among others,[2] seeking damages for, inter alia, Abagnale's allegedly negligent misrepresentation of the boundary lines of certain property in the town of Fairfield that the plaintiff had purchased from

---

[1] Gary Kramer, the plaintiff's husband, also was a plaintiff but died while the case was pending in the trial court. In the interest of simplicity, we refer to Myra Kramer as the plaintiff throughout this opinion.

[2] Robert J. Petisi, Carole W. Petisi, Nancy W. Thorne, Scott M. Gerard, Robert S. Scanlon, Theresa E. Stetson-Scanlon, and Dunlap-Hibbs Real Estate, Inc., also were named as defendants. The plaintiff's claims on appeal, however, relate only to Abagnale and Country Living Associates, Inc. In the interest of simplicity, we refer to Abagnale and Country Living Associates, Inc., collectively as the defendants.

Abagnale's clients, Robert J. Petisi and Carole W. Petisi.[3] In reliance on this court's holding in *Williams Ford, Inc.* v. *Hartford Courant Co.*, 232 Conn. 559, 586, 657 A.2d 212 (1995), that the doctrine of comparative negligence is applicable to a claim of negligent misrepresentation when only commercial losses are sustained, the trial court permitted the defendants to raise a special defense of comparative negligence. Following a trial, the jury found that, although Abagnale negligently had misrepresented the boundary lines, the plaintiff, by failing to obtain a current survey of the property before purchasing it, was 60 percent contributorily negligent and, therefore, was not entitled to damages. The trial court rendered judgment in favor of the defendants, and the plaintiff appealed to the Appellate Court, claiming, inter alia, that the trial court improperly had permitted the defendants to raise the defense of comparative negligence. See *Kramer* v. *Petisi*, 91 Conn. App. 26, 27, 879 A.2d 526 (2005). The Appellate Court concluded that the trial court properly had applied the law of comparative negligence to the plaintiff's negligent misrepresentation claim; see id., 31, 34; and, accordingly, affirmed the judgment of the trial court. Id., 39. We granted the plaintiff's petition for certification to appeal limited to the following issue: "Did the Appellate Court properly apply the law of comparative negligence to the . . . plaintiff's claims of [negligent] misrepresentation against the defendants?" *Kramer* v. *Petisi*, 276 Conn. 916, 888 A.2d 84 (2005). We answer the certified question in the affirmative and, accordingly, affirm the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the following facts that the jury reasonably could have found. "In 1978, John P. Edel and Jacqueline P. Edel,

---

[3] The complaint also alleged intentional misrepresentation and violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. Those claims, however, are not the subject of this appeal.

the owners of a four and one-half acre estate on North Street in Fairfield, subdivided the parcel of land into two parcels, which became known as 2250 North Street and 2228 North Street. The Edels had a fenced in horse paddock, which was located on both parcels. The paddock area of the land is the focus of the current dispute.

"In 1991, the Petisis purchased 2228 North Street from the Edels. When the Petisis purchased the property, the horse paddock was still in existence, but, because of the overgrown condition of the paddock land, the Petisis dismantled the portion of the fence that enclosed the paddock on their property. They asked [Robert S. Scanlon and Theresa E. Stetson-Scanlon] the owners of the other parcel, 2250 North Street, if they could mow the tall grass up to the remaining portion of the fence, which was located on the other parcel. The [Scanlons] granted permission, and, between 1992 and 1994, the Petisis maintained that parcel of land.

"On June 1, 1994, the Petisis listed their property for sale with Abagnale, an agent of Country Living Associates, Inc. The Petisis provided Abagnale and Country Living Associates, Inc., with a written disclosure document. In response to the disclosure document question regarding encroachments, boundary disputes or easements affecting the property, the Petisis replied that a '[s]ection of [the] backyard is fenced in including [a ten foot by fifty foot section of the] neighbor's property.'

"In July, 1994, the plaintiff and her husband decided to move from New Mexico to Connecticut. The couple looked at several homes in a ten day period between July 11 and 20. After attending a broker's open house at the Petisis' home, Nancy W. Thorne, the plaintiff's real estate agent, took the plaintiff to look at the house. Although Thorne had spoken with Abagnale, she did not wait for Abagnale before taking the plaintiff to view the property.

"Shortly thereafter, the plaintiff visited the property with members of her family, Thorne and Abagnale. There were three to five additional visits in the days that followed. At one of the visits, the plaintiff and Thorne walked around the property. The plaintiff asked Thorne about the location of the boundaries. When Thorne replied that she did not know the boundaries of the property, she told the plaintiff that she would go inside and ask Abagnale. Upon her return, Thorne told the plaintiff that the boundary was the western side of the fence, which actually was located on the adjoining parcel, 2250 North Street.

"The plaintiff offered to purchase the property for $1.25 million. After some difficult negotiations, the parties agreed on a sale price of $1.4 million. After the inspection of the property revealed a variety of problems, the Petisis signed the sales contract and an addendum dated August 24, 1994, promising, among other items, a $3000 credit at closing. In addition, the addendum provided that the Petisis would remove an inground oil tank and kerosene tank, and provide for the extermination of wasps, bats, carpenter ants and mice. The sales contract also provided that any improvements or appurtenances located on the Petisis' land were entirely within the boundaries of the property to be conveyed. The parties closed on September 26, 1994.

"Prior to the closing, the plaintiff did not obtain a survey of the property. Instead, she relied on a 1982 survey of the property, which indicated the boundaries of the property without the fence. There is some dispute as to whether the plaintiff's attorney [Scott M. Gerard] advised her to get a new survey done or whether it was suggested that the old survey be updated. Regardless, instead of obtaining a new survey, the plaintiff obtained an affidavit in lieu of a survey in which the Petisis stated that they had no knowledge of adverse rights, including easements, rights-of-way or encroachments.

"Despite the affidavit, the seller's disclosure statement indicated that a portion of the land, which was partially fenced in, was not part of the property. The sellers' disclosure form, however, was not given to the plaintiff. Abagnale did not provide this to Thorne or to the plaintiff.

"On April 23, 1996, the plaintiff received notice from [the Scanlons] the owners of 2250 North Street, the adjacent property, that they were asserting their rights to prevent her from adversely possessing a portion of their property. At issue was a .22 acre portion of the property that was fenced in and used by the plaintiff." *Kramer* v. *Petisi,* supra, 91 Conn. App. 28–30.

In 1996, the plaintiff filed an action against the the defendants, among others, alleging, inter alia, negligent misrepresentation of the boundary lines of the 2228 North Street property. The defendants filed an answer and affirmatively pleaded comparative negligence as a special defense. In their special defense, the defendants alleged that the plaintiff was contributorily negligent and that any damages that the plaintiff had sustained "were proximately caused by" her failure to obtain "an updated survey of the property." The plaintiff denied that the special defense of comparative negligence was applicable to her claim of negligent misrepresentation.

The opinion of the Appellate Court also sets forth the following facts and procedural history. "[In reliance on *Williams Ford, Inc.* v. *Hartford Courant Co.,* supra, 232 Conn. 586] the [trial] court instructed [the jury] that if the defendants could prove that the plaintiff was negligent by failing to obtain a survey prior to the closing and that her negligence contributed to more than 50 percent of her loss, then recovery would be barred. If the plaintiff's negligence was found to account for less than 50 percent of her loss, then the plaintiff's recovery would be merely reduced." *Kramer* v. *Petisi,*

supra, 91 Conn. App. 33–34. "The court [further] instructed the jury that the determination of whether the plaintiff was contributorily negligent is a question of fact."[4] Id., 33.

"At [the conclusion of the] trial, the jury found . . . against [the defendants on the plaintiff's negligent misrepresentation claim].[5] The jury determined that Abagnale negligently had misrepresented the boundary lines of the property . . . [but also determined] that the plaintiff was 60 percent contributorily negligent. Consequently, [the defendants] were not liable for damages." Id., 30. The plaintiff filed a motion to set aside the verdict on the ground that her failure to obtain a survey could not, as a matter of law, constitute contributory negligence. The trial court denied the motion and rendered judgment for the defendants.

The plaintiff appealed to the Appellate Court, claiming, inter alia, that the trial court improperly had permitted the defendants to raise the special defense of comparative negligence. Although acknowledging this court's holding in *Williams Ford, Inc.*, that the doctrine of comparative fault is applicable to an action for negligent misrepresentation involving purely commercial losses, the plaintiff maintained that the holding of *Williams Ford, Inc.*, does not extend to an action for negligent misrepresentation involving property line disputes. Id., 35–36. In support of her contention, the plaintiff relied on several cases, decided prior to *Williams Ford, Inc.*, in which this court had concluded that a plaintiff's allegedly negligent failure to obtain a land survey prior

[4] Although the plaintiff maintains that the trial court should not have instructed the jury on comparative negligence because that defense is not applicable to her claim of negligent misrepresentation, she does not contend that those instructions did not constitute a complete and accurate statement of the law of comparative negligence.

[5] We note that the jury found in favor of the defendants on the plaintiff's unfair trade practice and intentional misrepresentation claims.

to the purchase of real property does not constitute a defense to a claim that the defendant *fraudulently* had misrepresented the location of property boundary lines. E.g., *Warman* v. *Delaney*, 148 Conn. 469, 473–74, 172 A.2d 188 (1961); *Clark* v. *Haggard*, 141 Conn. 668, 673, 109 A.2d 358 (1954). The plaintiff maintained that, at least with respect to claims involving the misrepresentation of boundary lines, "the determination as to whether comparative negligence principles apply is not made on the basis of whether the misrepresentation was negligent or fraudulent but, rather, on whether the misrepresentation was material to the transaction." *Kramer* v. *Petisi*, supra, 91 Conn. App. 36. The Appellate Court rejected the plaintiff's claim and concluded that the trial court properly had determined that the defendants were entitled to assert comparative negligence as a defense. See id.

On appeal to this court, the plaintiff renews the claim that she raised in the Appellate Court. We agree with the Appellate Court that the trial court properly concluded that the doctrine of comparative negligence applies to an action for negligent misrepresentation of a property boundary line.

"This court has long recognized liability for negligent misrepresentation. We have held that even an innocent misrepresentation of fact may be actionable if the declarant has the means of knowing, ought to know, or has the duty of knowing the truth. . . . The governing principles [of negligent misrepresentation] are set forth in similar terms in § 552 of the Restatement (Second) of Torts (1977): One who, in the course of his business, profession or employment . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."

(Citations omitted; internal quotation marks omitted.) *Williams Ford, Inc.* v. *Hartford Courant Co.*, supra, 232 Conn. 575.

Furthermore, in *Williams Ford, Inc.*, this court held that the doctrine of comparative negligence is applicable to actions for negligent misrepresentation. Id., 586. In that case, we rejected the claim of the defendant, The Hartford Courant Company (Courant), that, in accordance with § 552A of the Restatement (Second) of Torts,[6] "[t]he recipient of a negligent misrepresentation is barred from recovery for pecuniary loss suffered in reliance upon it if he is negligent in so relying." (Internal quotation marks omitted.) Id., 580. Although we agreed with the Courant that our comparative negligence statute, General Statutes § 52-572h (b),[7] does not apply to purely commercial losses; id., 581; we nevertheless concluded that "the policy underlying § 52-572h (b) ought to apply to negligent misrepresentation as a matter of common law" even when only commercial losses are sustained.[8] Id. We therefore held that contrib-

---

[6] 3 Restatement (Second), Torts § 552A (1977).

[7] General Statutes § 52-572h (b) provides: "In causes of action based on negligence, contributory negligence shall not bar recovery in an action by any person or the person's legal representative to recover damages resulting from personal injury, wrongful death or damage to property if the negligence was not greater than the combined negligence of the person or persons against whom recovery is sought including settled or released persons under subsection (n) of this section. The economic or noneconomic damages allowed shall be diminished in the proportion of the percentage of negligence attributable to the person recovering which percentage shall be determined pursuant to subsection (f) of this section."

[8] As we explained in *Williams Ford, Inc.*, "[t]he purpose of comparative negligence is to ameliorate the harshness of the complete bar to liability resulting from the common law defense of contributory negligence. . . . This change in policy was accomplished by mandating a comparison by the fact finder of the relative degrees of negligence of the plaintiff and the defendant. [Section] 52-572h (b) provides that contributory negligence shall not bar recovery in an action by any person . . . to recover damages resulting from personal injury [or damage to property] . . . if the negligence was not greater than the combined negligence of the person or persons against whom recovery is sought . . . . The purpose of the comparative negligence statute was to replace the former rule, under which contributory

utory negligence is not an absolute bar to recovery for plaintiffs seeking damages for such losses resulting from a negligent misrepresentation and that principles of comparative fault are applicable in such cases. Id., 581, 586.

The plaintiff nevertheless asserts that the defense of comparative negligence is not available in an action for negligent misrepresentation involving property boundary lines when, as in the present case, the buyer allegedly is negligent in failing to obtain a survey of the property. The plaintiff's claim is based on a line of cases in which this court concluded that contributory negligence is not a defense to an action predicated on a property owner's fraudulent misrepresentation of the property's boundary line. See, e.g., *Warman* v. *Delaney*, supra, 148 Conn. 473–74; *Clark* v. *Haggard*, supra, 141 Conn. 673; *Lovejoy* v. *Isbell*, 73 Conn. 368, 374–75, 47 A. 682 (1900). We agree with the Appellate Court that

negligence acted as a complete defense, with a rule under which contributory negligence would operate merely to diminish recovery of damages based [on] the degree of the plaintiff's own negligence. . . .

"[Whenever] possible, courts should, as a matter of common law adjudication, assure that the body of the law—both common and statutory—remains coherent and consistent. . . . It would be consistent with that goal for the doctrine of comparative negligence, which by statute applies [only] to actions based on negligence resulting in damage to person or property, also to apply to the tort of negligent misrepresentation resulting in commercial loss. Furthermore, it would undermine the legislative purpose of § 52-572h (b) if we were to require a plaintiff to be free from contributory negligence as a prerequisite to recovery under a theory of negligent misrepresentation merely because the damages sought were commercial losses rather than property damage. The doctrine of contributory negligence should not, therefore, consistent with our entire body of law, both statutory and common, act as an absolute bar to recovery for plaintiffs seeking recovery for negligent misrepresentation." (Citations omitted; internal quotation marks omitted.) *Williams Ford, Inc.* v. *Hartford Courant Co.*, supra, 232 Conn. 585–86. We therefore held, "as a matter of common law, that the policy of the comparative negligence statute, § 52-572h, applies to negligence actions [when] only commercial losses are sustained." Id., 586.

these cases are inapposite because each of them involved a claim of fraudulent misrepresentation, a separate and distinct tort from the tort of negligent misrepresentation.[9]

Indeed, we long have held that contributory negligence is not a defense to a claim of fraudulent misrepresentation. See, e.g., *Franchey* v. *Hannes*, 152 Conn. 372, 380, 207 A.2d 268 (1965); *Clark* v. *Haggard*, supra, 141 Conn. 673; *Loverin* v. *Kuhne*, 94 Conn. 219, 224–25, 108 A. 554 (1919); *Sherwood* v. *Salmon*, 5 Day (Conn.) 439, 448–49 (1813); see also *Wallenta* v. *Moscowitz*, 81 Conn. App. 213, 223, 839 A.2d 641 (2004) ("The defendants' argument raises the issue of whether the law should choose either to allow the person who fraudulently misrepresented a basic fact to use the armament of caveat emptor to escape liability, or not to require the person to whom the misrepresentation was made to conduct an independent investigation as to the truth of an ascertainable fact. The Restatement [Second] chooses the latter. . . . This court does also." [Citation omitted; internal quotation marks omitted.]), cert. denied, 268 Conn. 909, 845 A.2d 414 (2004); 3 Restatement (Second), Torts § 545A (1977) ("[o]ne who justifiably relies [on] a fraudulent misrepresentation is not barred from recovery by his contributory negligence in doing so"). This is so because fraudulent misrepresentation is an intentional tort. 3 Restatement (Second), supra, § 545A, comment (a). As the Supreme Court of

[9] In contrast to a negligent representation, "[a] fraudulent representation . . . is one that is knowingly untrue, or made without belief in its truth, or recklessly made and for the purpose of inducing action upon it." *Clark* v. *Haggard*, supra, 141 Conn. 673. We also note that, at common law, fraudulent misrepresentation and intentional misrepresentation are the same tort. See, e.g., *Williams Ford, Inc.* v. *Hartford Courant Co.*, supra, 232 Conn. 561 (explaining that plaintiff had alleged "intentional misrepresentation or fraud"); *DeLuca* v. *C. W. Blakeslee & Sons, Inc.*, 174 Conn. 535, 546, 391 A.2d 170 (1978) (using term "intentional misrepresentation" to characterize fraud claim).

Minnesota has explained, "[when] society wants certain conduct absolutely prohibited and discouraged, apportionment of fault is not appropriate." *Florenzano* v. *Olson*, 387 N.W.2d 168, 175–76 (Minn. 1986). Thus, it "is the rule of law in virtually all states that fault should not be apportioned between an intentional tortfeasor and a merely negligent victim. See W. Prosser, [Torts (4th Ed. 1971) § 65, p. 426]. The reasons underlying this rule are persuasive. Intentional torts are punished not because the actor failed to use reasonable care . . . but because the actor intended the act. The difference between the victim's actions and the defendant's action is not one of degree . . . but of kind, and they are therefore not comparable." *Florenzano* v. *Olson*, supra, 176 n.7; see also 3 Restatement (Second), supra, § 552, comment (a) ("When there is no intent to deceive but only good faith coupled with negligence, the fault of the maker of the misrepresentation is sufficiently less to justify a narrower responsibility for its consequences. The reason a narrower scope of liability is fixed for negligent misrepresentation than for deceit is to be found in the difference between the obligations of honesty and of care, and in the significance of this difference to the reasonable expectations of the users of information that is supplied in connection with commercial transactions."); 37 Am. Jur. 2d 330, Fraud and Deceit § 319 (2001) ("[T]o a charge of . . . [wilful] fraud, the negligence of the party wronged or defrauded may not be interposed as a defense. . . . One who has perpetrated a fraud should not be permitted to say to the party defrauded when relief is demanded that he or she ought not to have believed or trusted the perpetrator and was negligent in doing so . . . ."). We therefore see no reason to bar the defense of comparative negligence in an action for negligent misrepresentation merely because that defense is not permitted in an action for fraudulent misrepresentation.

Like the Appellate Court, we also reject the plaintiff's claim that the fraudulent misrepresentation cases on which she relies stand for the proposition that the availability of the defense of comparative negligence "depends on the materiality of the misrepresentation and whether the declarant intended to secure some benefit to himself or herself," and not on the fact that the misrepresentation was intentional or fraudulent. Contrary to the plaintiff's contention, we rejected the defense of contributory negligence in those cases because they involved the tort of fraudulent misrepresentation, and not for any other reason. As we have explained, there is good reason to bar the defense of contributory negligence in an action for fraudulent misrepresentation; no such justification exists for negligent misrepresentation claims. Moreover, the plaintiff has failed to explain why, for purposes of the applicability of the defense of comparative negligence, a claim alleging negligent misrepresentation of a property boundary line should be treated any differently than any other negligent misrepresentation claim.[10] We therefore conclude that the Appellate Court properly affirmed the judgment of the trial court in favor of the defendants.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

---

[10] In support of her claim that comparative negligence is not a defense to the present action, the plaintiff relies on our decision in *Johnson* v. *Healy*, 176 Conn. 97, 102, 405 A.2d 54 (1978), in which we concluded that the builder-vendor of a new home may be held strictly liable, under a theory of express or implied warranty, for a misrepresentation concerning the condition of the home. *Johnson* is distinguishable from the present case because it involved the separate and distinct tort of innocent misrepresentation, which, in contrast to the tort of negligent misrepresentation, is predicated on principles of warranty. See id., 100–102. In addition, at oral argument before this court, the plaintiff suggested that we should extend our holding in *Johnson* to claims alleging negligent misrepresentation of a property boundary line. We decline to consider this contention because "[i]t is well settled that claims on appeal must be adequately briefed . . . and cannot be raised for the first time at oral argument before the reviewing court." *Grimm* v. *Grimm*, 276 Conn. 377, 393, 886 A.2d 391 (2005), cert. denied, 547 U.S. 1148, 126 S. Ct. 2296, 164 L. Ed. 2d 815 (2006).